# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC., MICHAEL REX "RAGING BEAR" MOONEY, | No. CV 09-00336 SOM-BMK **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Plaintiffs | |
| vs. | |
| ERIC H. HOLDER, JR., U.S. Attorney General; MICHELE LEONHART, Acting Administrator, U.S. Drug Enforcement Administration; FLORENCE T. NAKAKUNI, U.S. Attorney for the District of Hawaii, | |
| Defendants | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . 3

    II.    The Plaintiffs' Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    The Church's and Mooney's request for a declaration of blanket immunity from federal drug regulations is not justiciable and should be dismissed for lack of subject matter jurisdiction. . . . . . . . . . . . . 6

        A.    The Church lacks standing to sue based on its members' rights because the nature of the claims requires the participation of individual members in the lawsuit. . . . . . . . . . . . . . . . . . . . . . . 8

        B.    The Church's and Mooney's claims are not ripe because neither the Church nor Mooney has demonstrated that they face a genuine threat of prosecution for activities protected by RFRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.    The Church's and Mooney's failure to apply for an exemption from DEA regulations further weighs against judicial consideration of their claims. . . . . . . . . . . . . . . . . . . . . . . . . 14

    II.    The Plaintiffs' Complaint fails to state a claim under any of the provisions of law cited in the Complaint. . . . . . . . . . . . . . . . . . . . . 16

        A.    The Complaint does not state a claim under RFRA because it does not allege facts that plausibly suggest that restrictions on marijuana use "substantially burden" religious exercise. . . . . 17

        B.    Government restrictions on marijuana do not violate the First Amendment because they are neutral laws of general applicability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

C.   Restrictions on the use of marijuana are supported by a rational basis and so do not violate the Equal Protection Clause. . . . . 22

D.   The American Indian Religious Freedom Act (AIRFA), the Declaratory Judgment Act, and the Religious Land Use and Institutionalized Persons Act (RLUIPA) do not provide any basis for the Church's or Mooney's claims. . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**CASES**

Abbott Labs. v. Gardner,
  387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Aetna Life Ins. Co. v. Haworth,
  300 U.S. 227 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Alaska Airlines, Inc. v. City of Long Beach,
  951 F.2d 977 (9th Cir. 1992) (per curiam) . . . . . . . . . . . . . . . . . . . . 13

Allen v. Wright,
  468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ass'n of Am. Med. Colls. v. United States,
  217 F.3d 770 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Beacon Theatres, Inc. v. Westover,
  359 U.S. 500 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bell Atl. Corp. v. Twombly,
  127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

City of Los Angeles v. Lyons,
  461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Droz v. Comm'r,
  48 F.3d 1120 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Employment Div. v. Smith,
  494 U.S. 872 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

FCC v. Beach Commc'ns, Inc.,
  508 U.S. 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,
  546 U.S. 418 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

Guam v. Guerrero,
    290 F.3d 1210 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Harris v. McRae,
    448 U.S. 297 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Heller v. Doe ex rel. Doe,
    509 U.S. 312 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Henderson v. Terhune,
    379 F.3d 709 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Hunt v. Wash. State Apple Adver. Comm'n,
    432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

KDM ex rel. WJM v. Reedsport Sch. Dist.,
    196 F.3d 1046 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Lyng v. Nw. Indian Cemetery Protective Ass'n,
    485 U.S. 439 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

McBride v. Shawnee County, Kansas Court Servs.,
    71 F. Supp. 2d 1098 (D. Kan. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 25

McCarthy v. Madigan,
    503 U.S. 140 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Moss v. U.S. Secret Serv.,
    572 F.3d 962 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales,
    474 F. Supp. 2d 1133 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . 19, 22

Navajo Nation v. U.S. Forest Serv.,
    535 F.3d 1058 (9th Cir. 2008) (en banc) . . . . . . . . . . . 18, 20, 21, 27

O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft,
    389 F.3d 973 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

O Centro Espirita Beneficiente Uniao do Vegetal,
    282 F. Supp. 2d 1271 (D.N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 25

Olsen v. Mukasey,
    541 F.3d 827 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Reno v. Catholic Soc. Servs., Inc.,
    509 U.S. 43 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

San Diego County Gun Rights Comm. v. Reno,
    98 F.3d 1121 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Savage v. Glendale Union High Sch.,
    343 F.3d 1036 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,
    127 S. Ct. 1184 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Skelly Oil Co. v. Phillips Petroleum Co.,
    339 U.S. 667 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Soc'y of Separationists, Inc. v. Herman,
    959 F.2d 1283 (5th Cir. 1992) (en banc) . . . . . . . . . . . . . . . . . . . . 10

Stormans, Inc. v. Selecky,
    571 F.3d 960 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Thomas v. Anchorage Equal Rights Comm'n,
    220 F.3d 1134 (9th Cir. 2000) (en banc) . . . . . . . . . . . . . 7, 11-13, 15

United States v. Bauer,
    84 F.3d 1549 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Fry,
    787 F.2d 903 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Mitchell,
    502 F.3d 931 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Ritchie,
    342 F.3d 903 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Warth v. Seldin,
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

Williamson v. Lee Optical of Okla., Inc.,
    348 U.S. 483 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme,
    433 F.3d 1199 (9th Cir. 2006) (en banc) . . . . . . . . . . . . . . . . . . . . . . 7

## CONSTITUTIONAL PROVISIONS

Equal Protection Clause, U.S. Const. amend. XIV, § 1 . . . . . . . . . . . 2, 6, 22

Free Exercise Clause, U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

## FEDERAL STATUTES

American Indian Religious Freedom Act (AIRFA), 42 U.S.C. § 1996   6, 25, 26

Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L.
    No. 91-513, 84 Stat. 1236. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Controlled Substances Act, 21 U.S.C. §§ 801–971 . . . . . . . . . . . . . . . . 3, 4

Declaratory Judgment Act, 28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . 25, 26

Religious Freedom Restoration Act (RFRA) of 1993, 42 U.S.C. §§ 2000bb
    to 2000bb-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 10, 18

Religious Land Use and Institutionalized Persons Act (RLUIPA) of 2000, 42
    U.S.C. §§ 2000cc to 2000cc-5 . . . . . . . . . . . . . . . . . . . . . . . . 18, 25, 26

## FEDERAL REGULATIONS

21 C.F.R. § 1307.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

21 C.F.R. §§ 1300–1316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 C.F.R. § 0.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL RULES

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## OTHER AUTHORITIES

Office of Diversion Control, Drug Enforcement Administration, Guidance
      Regarding Petitions for Religious Exemption from the Controlled
      Substances Act Pursuant to the Religious Freedom Restoration Act
      (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## PRELIMINARY STATEMENT

Plaintiffs Oklevueha Native American Church of Hawaii, Inc., and Michael Rex Mooney ask the Court to afford them unconditional immunity for any future possession, use, or trafficking of marijuana in contravention of federal drug laws, all without presenting any basis to believe that the Government will even take such action against the Church or Mooney.  The plaintiffs' complaint should be dismissed because it fails to meet the jurisdictional requirements of standing and ripeness and because it fails to state a claim under the Religious Freedom Restoration Act (RFRA) of 1993, 42 U.S.C. §§ 2000bb to 2000bb-4, or any other provision of law.

Without any allegations suggesting a genuine threat of prosecution, the Church's and Mooney's suit is unripe and should be dismissed for lack of jurisdiction.  The Church's claims in particular should also be dismissed because the Church lacks standing to bring claims based on the religious rights of individual church members; those church members must appear before the Court themselves to assert their own rights.  Furthermore, the fact that the Church and Mooney have not applied for an administrative exemption from Drug Enforcement Administration regulations provides further reason for the Court to decline to hear this case.  Thus, the Court should dismiss both the Church's and Mooney's claims

under Rule 12(b)(1) of the Federal Rules of Civil Procedure without examining the merits.

If the Court reaches the merits of the plaintiffs' claims, the Court should then dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  RFRA cannot support claims seeking protection for drug activity unrelated to religious practice, such as production and trafficking of marijuana or "therapeutic" use of marijuana.  And even assuming for purposes of resolving this motion that the plaintiffs hold sincere religious beliefs and engage in religious practices entailing marijuana use, the plaintiffs have not alleged that laws requiring them to abstain from marijuana or obtain a regulatory exemption from the DEA require the plaintiffs to violate their religion in a way that amounts to a "substantial[] burden" within the meaning of RFRA, § 2000bb-1(a).  The Church and Mooney also do not state claims under any other provisions of federal law. The Free Exercise Clause could not support the plaintiffs' claims, because that clause does not exempt religious practices from neutral laws of general applicability.  The Equal Protection Clause could not support the plaintiffs' claims, because the Government has a rational basis for regulating different drugs differently.  Finally, none of the other federal statutes cited in the plaintiffs' brief provides an independent cause of action against the Government.

The Court therefore should dismiss all of the Church's and Mooney's claims.

## **BACKGROUND**

### I.     **Statutory and Regulatory Background**

The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb to 2000bb-4, provides that the federal government "shall not substantially burden a person's exercise of religion" unless "it demonstrates that application of the burden to the person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." Id. § 2000bb-1(a)–(b).  RFRA applies to "all Federal law, and the implementation of that law," id. § 2000bb-3(a), and it authorizes lawsuits by persons whose religious exercise has been burdened, id. § 2000bb-1(c).

The Controlled Substances Act, 21 U.S.C. §§ 801–971, provides a comprehensive federal scheme to regulate controlled substances.  The CSA makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," except as authorized by the Act. 21 U.S.C. § 841(a)(1).  The CSA similarly criminalizes possession of any controlled substance except as authorized by the Act.  Id. § 844(a).  Congress enacted the Controlled Substances Act based on a finding that "[t]he illegal importation, manufacture, distribution, and possession and improper use of

controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2). The CSA established five "schedules" of controlled substances, and placed marijuana under Schedule I. See id. § 812(a); Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 202(c), sched. I(c)(10), 84 Stat. 1236, 1249.

The CSA authorizes the Attorney General to "promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances and to listed chemicals." 21 U.S.C. § 821. The Attorney General has delegated this authority to the Drug Enforcement Administration. See 21 U.S.C. § 871(a); 28 C.F.R. § 0.100. The DEA has promulgated various regulations related to controlled substances in Title 21, Chapter II of the Code of Federal Regulations. 21 C.F.R. §§ 1300–1316. These regulations provide that "[a]ny person may apply for an exception to the application of any provision of [the DEA regulations]" by filing a written request with the Administrator of the DEA, who has discretion to grant any exception. 21 C.F.R. § 1307.03; see also 21 U.S.C. § 822(d) ("The Attorney General may, by regulation, waive the requirement for registration of certain manufacturers, distributors, or dispensers if he finds it consistent with the public health and safety."). This statutory and regulatory waiver process allows DEA to consider individual requests for exemptions from regulation under the Controlled

4

Substances Act, including exemptions based on RFRA.  <u>See generally</u> Office of

Diversion Control, Drug Enforcement Administration, Guidance Regarding

Petitions for Religious Exemption from the Controlled Substances Act Pursuant to

the Religious Freedom Restoration Act (2009),

http://www.deadiversion.usdoj.gov/pubs/rfra_exempt012209.pdf (DEA guidelines

for submitting exemption applications).

## II.    The Plaintiffs' Complaint

Plaintiff Oklevueha Native American Church of Hawaii, Inc., alleges that it

is a Hawaii nonprofit corporation and is a Hawaii-based chapter of the Oklevueha

Earthwalks Native American Church of Utah, Inc.  Compl. for Declaratory Relief

and for Prelim. and Permanent Injunctive Relief ¶¶ 1, 9.  Plaintiff Michael Rex

"Raging Bear" Mooney alleges that he is a Hawaii citizen and identifies himself as

a "Spiritual Leader" and as the "Founder, President and Medicine Custodian" of

the Church.  Compl. ¶ 2.

The plaintiffs allege that the Church is a religious organization whose

religious practices incorporate use of psychoactive drugs.  Compl. ¶¶ 1, 13–14; <u>see</u>

<u>also</u> Compl. ¶ 11 (listing numerous psychoactive substances that the Church

purportedly "honors and embraces").  The plaintiffs assert that their cultivation,

acquisition, manufacture, processing, possession, use, and distribution of marijuana

is protected under RFRA and other provisions of federal law, including the Free

Exercise Clause of the First Amendment, the Equal Protection Clause of the

Fourteenth Amendment, and the American Indian Religious Freedom Act

(AIRFA), 42 U.S.C. § 1996.  Compl. ¶¶ 34–54.  They seek declaratory and

injunctive relief prohibiting the Government from interfering with their marijuana-

related activities.  Compl. at 12–14 (Prayer for Relief).

## <u>ARGUMENT</u>

I.     **The Church's and Mooney's request for a declaration of blanket immunity from federal drug regulations is not justiciable and should be dismissed for lack of subject matter jurisdiction.**

This Court lacks jurisdiction over the Church and Mooney's Complaint,

because the Church's and Mooney's claims fail to satisfy the jurisdictional

requirements of standing and ripeness.

The justiciability requirements of standing and ripeness confine action by

federal courts to the resolution of "cases and controversies" and prevent courts

from addressing matters better suited to legislative or executive action.  <u>See</u> <u>Allen</u>

<u>v. Wright</u>, 468 U.S. 737, 750 (1984).  The requirement of standing demands that

any plaintiff in federal court must have a sufficient "personal stake in the outcome

of the controversy as to warrant <u>his</u> invocation of federal-court jurisdiction and to

justify exercise of the court's remedial powers on his behalf."  <u>Warth v. Seldin</u>,

422 U.S. 490, 498–99 (1975) (internal quotation mark omitted).  The ripeness

doctrine bars the courts from "entangling themselves in abstract disagreements

6

over administrative policies," Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), before those disagreements have crystallized into any concrete and material dispute between the parties.  See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc) ("A concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate." (quoting San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1132 (9th Cir. 1996))).  Both requirements entail constitutional limits on the authority of the judiciary as well as further limitations that the judiciary imposes on itself for prudential reasons.  See Warth v. Seldin, 422 U.S. 490, 498 (1975); Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993).  Both the constitutional requirements and the prudential requirements must be satisfied in every case.  See Warth, 422 U.S. at 517–18; Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme, 433 F.3d 1199, 1211 (9th Cir. 2006) (en banc).

The requirement of justiciability is far more than a merely technical consideration in this case, given the extraordinary nature of the relief the plaintiffs are seeking.  Plaintiffs seek a broad decree that would bar defendants from prosecuting or taking other action against them for any future marijuana-related activity, even if that activity is unrelated to plaintiffs' alleged religious practices. See Compl. for Declaratory Relief and for Prelim. and Permanent Injunctive Relief at 12–14 (seeking relief that would immunize not only religious use of marijuana

7

but also other marijuana-related activity, such as trafficking and "therapeutic" use of marijuana).  In effect, plaintiffs have asked the Court to grant them advance blanket immunity from a wide swath of legitimate federal law enforcement action before there is even any indication of a material threat to any interest of the plaintiffs, let alone any right protected by federal law.  The extremity of the plaintiffs' request makes it especially important for the Court to ensure that it stays within the bounds of judicial authority and does not casually interfere with the Government's legitimate efforts to enforce federal law.

In determining whether it has subject matter jurisdiction, a court examines the facts alleged in the complaint.  See Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).  If a case presents multiple jurisdictional issues, the Court can approach those issues in any order and can dismiss the case based on any jurisdictional defect that it finds.  See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 127 S. Ct. 1184, 1191 (2007) (explaining that a court may "choose among threshold grounds for denying audience to a case on the merits" (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999))).

**A.  The Church lacks standing to sue based on its members' rights because the nature of the claims requires the participation of individual members in the lawsuit.**

The Church lacks standing to assert claims based on the religious rights of its members, because determining whether Church members are entitled to any

8

statutory or constitutional protections based on their religious convictions

necessarily requires examining the quality and degree of the convictions of

individual church members, and that in turn necessarily requires that those

individual church members appear in court to assert their own rights.

A plaintiff in federal court ordinarily may only assert its own rights and

cannot seek relief based on the rights of third parties.  See Warth, 422 U.S. at 499.

An organization can bring claims based on the rights of individual members of the

organization only when the organization meets three requirements: "(a) its

members would otherwise have standing to sue in their own right; (b) the interests

it seeks to protect are germane to the organization's purpose; and (c) neither the

claim asserted nor the relief requested requires the participation of individual

members in the lawsuit."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S.

333, 343 (1977).  Even leaving aside the first and second requirements, the Church

fails the third requirement, because individual members would have to participate

in the lawsuit to demonstrate that they are entitled to relief from federal drug

regulations and to obtain that relief.  Religious belief is a deeply personal matter of

conscience, and individual adherents to the same religion differ in the nature and

sincerity of their religious beliefs, the scrupulousness of their observance of

religious ritual, and the precise role and meaning of that observance in their

personal faith.  For this reason, in Harris v. McRae, 448 U.S. 297 (1980), the

9

Supreme Court held that the Women's Division of the Board of Global Ministries of the United Methodist Church lacked standing to assert the free-exercise rights of its members in challenging restrictions on the use of federal funds for reimbursing the costs of abortions.  See id. at 321; see also Soc'y of Separationists, Inc. v. Herman, 959 F.2d 1283, 1288 (5th Cir. 1992) (en banc) ("It is often difficult for religious organizations to assert free exercise claims on behalf of their members because the religious beliefs and practices of the membership differ.").

To determine whether any rights granted under RFRA are relevant in this case, the Court would have to examine individual Church members' religious beliefs and religious observance to make an independent determination for each individual whether federal government regulation imposes a "substantial burden" on genuine religious beliefs.  See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 430 (2006) (application of 42 U.S.C. § 2000bb-1(b) turns on "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.").  Individual members' participation would also be necessary for purposes of relief—for one thing, to issue an order that would bar the federal government from enforcing federal drug regulations against Church members, the Court would at the very least need to identify the Church members who should be held exempt from federal regulation.  See Fed. R. Civ. P. 65(d)(1)(B), (C) (any injunction issued by a court

must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required").  Accordingly, the Church cannot pursue religion-based claims on behalf of its individual members, and the Church should be dismissed from this lawsuit.

> **B.**     **The Church's and Mooney's claims are not ripe because neither the Church nor Mooney has demonstrated that they face a genuine threat of prosecution for activities protected by RFRA.**

The Court also lacks subject matter jurisdiction over the Church's and Mooney's claims because their claims are unripe; that is, they do not present a concrete dispute appropriate for judicial resolution.  The Church's and Mooney's claims do not challenge any specific action that the Government has taken or threatened to take in response to some specific activity by the plaintiffs.  Rather, the Church and Mooney are asking the Court to issue an advisory opinion to determine their rights in the abstract so as to head off unspecified future action by the Government.  This kind of suit fails to satisfy the jurisdictional requirement of ripeness and amounts to a request for an impermissible advisory opinion.

In Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134 (9th Cir. 2000) (en banc), the Ninth Circuit, sitting en banc, explained that a claim for declaratory or injunctive relief against the government's enforcement of a law is ripe for review only if the plaintiff can demonstrate a "genuine threat of imminent prosecution."  Id. at 1139 (quoting San Diego Gun Rights Comm., 98 F.3d at

11

1126).  "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution" is enough by itself to create a ripe dispute.  Id.

In Thomas, the Ninth Circuit identified three factors that a court should examine to determine whether a plaintiff has established a genuine threat of imminent prosecution: "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  Id. at 1139.  Upon examining these three factors, the court found that the plaintiffs' challenge against housing-discrimination laws was not ripe for review.  Id. at 1141.  The plaintiffs unequivocally stated that they had violated the statute and would do so in the future, but because the plaintiffs had not offered any details about the timing and circumstances of their intended violations, the Court found that they had not articulated a concrete plan.  Id. at 1139–40.  The Court explained, "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan."  Id. at 1139.  Moving on to the second factor, the Court observed, "There has been no specific threat or even hint of future enforcement or prosecution" against the plaintiffs.  Id. at 1140.  Finally, the Court found that, because the history of enforcement of the statute consisted solely of a handful of civil complaints, "[a]t most, the past prosecution factor [was] a neutral

one in this case." Id. at 1141.  Examining the three factors together, the Court

concluded that "any threat of enforcement or prosecution against the [plaintiffs] in

this case—though theoretically possible—is not reasonable or imminent."  Id.

Similarly, in this case, the plaintiffs have not stated anything more than a

general intent to engage in conduct regulated by the CSA at an unspecified time in

the future, so they fail the first of the three factors identified in Thomas.  There has

been no specific threat of enforcement against the plaintiffs, so they also fail the

second factor.  As for the third factor, the plaintiffs present only vague hints of past

prosecution or enforcement action: all the plaintiffs allege is that federal law

enforcement authorities seized cannabis from a FedEx delivery belonging to an

unidentified member of the Church.  See Compl. ¶ 31.  A single isolated incident in

which authorities seized cannabis from an individual who professes the same

religion as the plaintiffs is not enough to establish that the plaintiffs will face a

similar seizure or will face criminal charges.  Indeed, the plaintiffs' allegations

provide no description of the circumstances of the seizure, no indication of the

quantity of material seized, and no indication that the material seized was solely, or

even partly, for personal use in genuine religious practices.  Consequently, just like

the plaintiffs in Thomas, the plaintiffs in this case have failed to establish a ripe

controversy.  See Alaska Airlines, Inc. v. City of Long Beach, 951 F.2d 977, 986

(9th Cir. 1992) (per curiam) ("[W]here it is impossible to know whether a party

will ever be found to have violated a statute, or how, if such a violation is found, those charged with enforcing the statute will respond, any challenge to that statute is premature."); <u>see also</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105–06 (1983) (finding that a plaintiff who alleged that police had used an illegal chokehold on him could not seek an injunction against the future use of such chokeholds because he did not allege facts suggesting that police were likely to use such a chokehold on him in the future).  Thus, the plaintiffs' claims are not justiciable, and the Court should dismiss both the Church's and Mooney's claims for lack of subject matter jurisdiction.

**C.  The Church's and Mooney's failure to apply for an exemption from DEA regulations further weighs against judicial consideration of their claims.**

Further compounding the reasons why judicial intervention is inappropriate at this time is that the plaintiffs have not availed themselves of DEA administrative procedures for seeking exemptions from DEA regulations.  The plaintiffs' failure to pursue administrative relief weighs against judicial intervention in two ways: First, it further undermines the plaintiffs' ability to demonstrate any present hardship that would make their claims ripe for review.  Second, it provides reason to withhold review out of respect for the authority and expertise of the DEA and to permit the DEA to examine and resolve the subjects of the plaintiffs' claims without judicial intervention.

DEA regulations allow a person to "apply for an exception to the application of any provision of [the DEA regulations] by filing a written request stating the reasons for such exception." 21 C.F.R. § 1307.03. This exemption process allows DEA to consider individual requests for exemptions from regulation under the Controlled Substances Act, including exemptions for religious practice. The plaintiffs do not allege that they have sought such an exemption.

"[I]n evaluating ripeness, courts assess 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Ass'n of Am. Med. Colls. v. United States, 217 F.3d 770, 779–80 (9th Cir. 2000); see Thomas, 220 F.3d at 1141. Given that the plaintiffs have not requested an exemption through the DEA's administrative process, withholding judicial intervention at this time will not pose any meaningful hardship for the plaintiffs.

The Court has discretion to require plaintiffs to resort to administrative remedies before seeking relief from the Court under RFRA or other provisions. See McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion [by statute], sound judicial discretion governs."). Requiring the plaintiffs to proceed through the exemption process and allowing that process to run its course could completely resolve the plaintiffs' grievances, and even if it does not, it will at least help clarify the facts surrounding the dispute

15

and the precise issues that need to be resolved.  On the other hand, prematurely

considering the plaintiff's claims now would permit plaintiffs to bypass the

exemption process and deny DEA a fair opportunity to examine and resolve the

plaintiffs' claims within the administrative process under the authority that

Congress vested in the DEA.  The Court should dismiss the Church's and

Mooney's claims as unripe and should exercise its discretion to require the

plaintiffs to resort to administrative remedies before bringing claims in court.

## II.    The Plaintiffs' Complaint fails to state a claim under any of the provisions of law cited in the Complaint.

Even if the Court could reach the merits of the plaintiffs' claims, it would

have to dismiss the plaintiffs' claims, because the allegations in the complaint do

not state a valid claim under RFRA, the Constitution, or any of the other statutory

provisions invoked in the Complaint.

To withstand a motion to dismiss for failure to state a claim, the complaint

must contain "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.  Factual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v.

Twombly, 127 S. Ct. 1955, 1965 (2007) (footnote omitted) (citations omitted).  In

evaluating the sufficiency of the complaint, the Court considers the facts alleged in

the complaint and may also consider "matters of judicial notice."  <u>United States v.</u> <u>Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  The rules of pleading require factual allegations "plausibly suggesting," and "not merely consistent with," the elements of a valid claim for relief.  <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1966; <u>see</u> <u>Moss v. U.S.</u> <u>Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009).

> **A.**     **The Complaint does not state a claim under RFRA because it does not allege facts that plausibly suggest that restrictions on marijuana use "substantially burden" religious exercise.**

The Church and Mooney fail to state a claim under the Religious Freedom Restoration Act.  The only activity of the plaintiffs' that could conceivably fall within the scope of RFRA is the actual use of marijuana, because the Complaint does not allege that any other activity—such as the cultivation or distribution of marijuana, or possession of marijuana for purposes other than religious use—carries any religious significance for the plaintiffs.  But Government restrictions on the plaintiffs' use of marijuana cannot support a RFRA claim, because the allegations in the complaint at most suggest that those restrictions diminish the plaintiffs' religious practice.  The Ninth Circuit has established that Government action that merely diminishes a person's religious experience, but does not directly compel the person to act contrary to his religion, does not "substantially burden" religious exercise in a way that can support a claim under RFRA.

To establish a prima facie claim under RFRA, a plaintiff must establish two elements: "First, the activities the plaintiff claims are burdened by the government action must be an 'exercise of religion.'  Second, the government action must 'substantially burden' the plaintiff's exercise of religion."  Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc) (quoting 42 U.S.C. § 2000bb-1(a)) (citations omitted), cert. denied, 129 S. Ct. 2763 (2009).

The only aspect of the plaintiffs' activities that can amount to "exercise of religion" as described in the Complaint is the plaintiffs' use of marijuana in allegedly religious practices.  RFRA defines the term "exercise of religion" broadly; the statute covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §§ 2000bb-2(4); 2000cc-5. Even this broad definition, however, does not encompass activities other than the plaintiffs' purported religious use of marijuana, such as cultivation or distribution of marijuana or possession of marijuana for purposes other than religious use, such as sale or "therapeutic" use.  While the plaintiffs allege that they cultivate, distribute, and possess marijuana for religious purposes, they do not allege that cultivation, distribution, or possession of marijuana carries any religious significance in itself.  These ancillary activities cannot be considered "exercise[s] of religion" any more than parking illegally during a church service could be considered an exercise of religion.  Indeed, the Ninth Circuit has previously

rejected attempts by criminal defendants seeking shelter under RFRA from marijuana-related charges other than simple possession or use of marijuana.  <u>See</u> <u>Guam v. Guerrero</u>, 290 F.3d 1210, 1222–23 (9th Cir. 2002) (rejecting criminal defendant's assertion of RFRA as a defense to charges of importation of marijuana); <u>United States v. Bauer</u>, 84 F.3d 1549, 1559 (9th Cir. 1996) (rejecting criminal defendants' assertion of RFRA as a defense to charges of conspiracy to distribute, possession with intent to distribute, and money laundering, upon noting that "[n]othing before us suggests that Rastafarianism would require this conduct"); <u>see also</u> <u>Multi Denominational Ministry of Cannabis & Rastafari, Inc. v.</u> <u>Gonzales</u>, 474 F. Supp. 2d 1133, 1146–47 (N.D. Cal. 2007) (finding that sacramental use of marijuana could not support the plaintiffs' request for an "unconditional injunction" affording "complete immunity from the federal government's drug laws" and dismissing the plaintiffs' RFRA claims).

The plaintiffs perhaps adequately allege that the actual use of marijuana can amount to religious exercise.  But the Complaint does not adequately allege that restrictions on the use of marijuana "substantially burden" the plaintiffs' exercise of religion, because the plaintiffs only allege that abstaining from marijuana diminishes their religious experience; they do not allege that the Government's prohibition of marijuana forces them to act contrary to their religious beliefs.

While RFRA's definition of an "exercise of religion" is expansive, the statute's notion of what kinds of interference constitute a "substantial burden" on such an exercise of religion is very narrow.  In <u>Navajo Nation</u>, the Ninth Circuit explained that "a 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  <u>Id.</u> at 1069–70.  In that case, American Indians brought a RFRA challenge against the Government's approval of the use of recycled wastewater for making artificial snow on Government-owned land.  <u>Id.</u> at 1063.  The plaintiffs used the land for religious exercises and claimed that the use of wastewater would contaminate the mountain and devalue their religious practices.  <u>Id.</u>  The court rejected the plaintiffs' challenge because even though the challenged action might seriously diminish the plaintiffs' religious practices, it did not force the plaintiffs to violate their religion.  <u>Id.</u> at 1070.  The court explained that "a government action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion is not what Congress has labeled a 'substantial burden'" in RFRA.  <u>Id.</u> at 1063.

In this case, the plaintiffs have adequately alleged that at least some forms of marijuana use amount to "exercise of religion" for purposes of RFRA.  They also assert that this marijuana use enhances their religious practice.  Compl. ¶ 13.  But

the plaintiffs do not claim that being forced to apply for a regulatory exemption

from controlled-substances laws, or being forced to abstain from the use of

marijuana altogether, necessarily causes them to violate the tenets of their religion.

Indeed, the plaintiffs state that their religious practices entail use of a whole

panoply of drugs, some of which are not currently regulated by federal law.  See

Compl. ¶ 11.  At most, the plaintiffs have alleged that Government restrictions on

marijuana use "decrease[] the spirituality, the fervor, or the satisfaction" with

which they practice their religion, Navajo Nation, 535 F.3d at 1063.  Under Navajo

Nation, such allegations do not state a RFRA claim.

> **B.   Government restrictions on marijuana do not violate the First Amendment because they are neutral laws of general applicability.**

Government regulation of the use of marijuana does not violate the Free

Exercise Clause of the First Amendment, U.S. Const. amend. I, because neutral

laws of general applicability do not violate the First Amendment even if they

impair religious practices.

The Supreme Court established in Employment Division v. Smith, 494 U.S.

872 (1990), that the Free Exercise Clause "does not relieve an individual of the

obligation to comply with a 'valid and neutral law of general applicability on the

ground that the law proscribes . . . conduct that his religion prescribes.'"  Id. at 879.

As the Ninth Circuit explained in Stormans, Inc. v. Selecky, 571 F.3d 960 (9th Cir.

21

2009), a law is neutral as long as it does not "single out . . . the practice of any religion because of its religious content," and a law is generally applicable as long as it is not "substantially underinclusive," meaning that the law does not impose burdens that fall only on religious practitioners and not on other persons.  <u>Id.</u> at 982, 984.  As a number of federal courts have recognized, the federal Controlled Substances Act and associated regulations are both neutral and generally applicable, as they do not single out religious practice, and they affect religious drug use and nonreligious drug use equally.  <u>See, e.g.</u>, <u>Olsen v. Mukasey</u>, 541 F.3d 827, 832 (8th Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 2178 (2009); <u>O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft</u>, 389 F.3d 973, 992 (10th Cir. 2004), <u>aff'd sub nom.</u> <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418 (2006); <u>Multi Denominational Ministry</u>, 474 F. Supp. 2d at 1144. Accordingly, the federal Controlled Substances Act and associated regulations do not violate the Free Exercise Clause even if they affect religious practices.

   **C.    Restrictions on the use of marijuana are supported by a rational basis and so do not violate the Equal Protection Clause.**

The Government's regulation of marijuana also does not violate the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, because distinctions drawn between marijuana and other drugs, such as peyote and hoasca, are supported by a rational basis.

As the Supreme Court explained in FCC v. Beach Communications, Inc., 508 U.S. 307 (1993), "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. at 313.

The challenged restrictions on the use of marijuana do not rely on suspect classifications; marijuana users are not a suspect class. Restrictions on the use of marijuana also do not burden any fundamental rights for purposes of equal protection analysis. As explained in Section II.B above, Government restrictions on marijuana do not violate the Free Exercise Clause even if they interfere with religious practices. Government action that does not violate the Free Exercise Clause also does not burden religious rights for purposes of equal protection analysis. See KDM ex rel. WJM v. Reedsport Sch. Dist., 196 F.3d 1046, 1052 n.4 (9th Cir. 1999); see also Droz v. Comm'r, 48 F.3d 1120, 1125 (9th Cir. 1995) ("For equal protection purposes, heightened scrutiny is applicable to a statute that applies selectively to religious activity only if the plaintiff can show that the basis for the distinction was religious, not secular.").

Government regulation of marijuana therefore does not violate the Equal Protection Clause as long as the classifications it employs can be supported by some conceivable rational basis. See Beach Commc'ns, 508 U.S. at 314–15.

Differing treatment of marijuana, peyote, and hoasca is supported by a rational basis because the production, distribution, and use of different drugs conceivably can affect individuals and the public in different ways.

The plaintiffs protest that marijuana, peyote, and hoasca have similar effects, but this is irrelevant. Even if the plaintiffs could produce overwhelming evidence that the three drugs had similar effects on individuals and the public at large—or even identical effects—distinctions among the drugs would still survive rational basis scrutiny. A classification survives rational basis scrutiny as long as there is a conceivable rational basis for those classifications, regardless of whether that rational basis is actually supported by evidence. See Beach Commc'ns, 508 U.S. at 314–15 ("[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."); see also Heller v. Doe ex rel. Doe, 509 U.S. 312, 320–21 (1993); Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489 (1955) ("Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others." (citations omitted)).

Numerous federal court decisions have found that it is rational for the

Government to regulate different drugs differently.  See, e.g., United States v. Fry,

787 F.2d 903, 905 (4th Cir. 1986) (rejecting challenge to different treatment of

marijuana, alcohol, and tobacco); O Centro Espirita Beneficiente Uniao do

Vegetal, 282 F. Supp. 2d 1271, 1283 (D.N.M. 2002) (finding that "differences

between various drugs" are relevant in equal protection analysis); McBride v.

Shawnee County, Kansas Court Servs., 71 F. Supp. 2d 1098, 1101–02 (D. Kan.

1999) (rejecting equal protection claims and noting differences between peyote and

marijuana).  This Court should follow these decisions and dismiss the plaintiffs'

equal protection claims.

> **D.     The American Indian Religious Freedom Act (AIRFA), the
> Declaratory Judgment Act, and the Religious Land Use and
> Institutionalized Persons Act (RLUIPA) do not provide any basis
> for the Church's or Mooney's claims.**

None of the other federal statutes cited in the Complaint—the American

Indian Religious Freedom Act (AIRFA), 42 U.S.C. § 1996, the Declaratory

Judgment Act, 28 U.S.C. § 2201; and the Religious Land Use and Institutionalized

Persons Act (RLUIPA) of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5—provides

independent support for claims against the Government in federal court.

The American Indian Religious Freedom Act (AIRFA), 42 U.S.C. § 1996,

states that "it shall be the policy of the United States to protect and preserve for

American Indians their inherent right of freedom to believe, express, and exercise"

traditional religions.  Id.  The Supreme Court and the Ninth Circuit have held that

this Act is only a statement of policy and does not create any rights that can

support claims against the Government in federal court.  See Lyng v. Nw. Indian

Cemetery Protective Ass'n, 485 U.S. 439, 455 (1987); United States v. Mitchell,

502 F.3d 931, 949 (9th Cir. 2007); Henderson v. Terhune, 379 F.3d 709, 715 (9th

Cir. 2004).  Accordingly, all claims purportedly based on this Act should be

dismissed.

The Declaratory Judgment Act, 28 U.S.C. § 2201, also does not provide a

cause of action against the Government; it merely authorizes a form of relief.  See

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) ("'[T]he

operation of the Declaratory Judgment Act is procedural only.'" (quoting Aetna

Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)) (alteration in original));

Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508–09 (1959) (noting that the

Declaratory Judgment Act was designed to "leav[e] substantive rights

unchanged").  Accordingly, claims purportedly based on the Declaratory Judgment

Act should be dismissed.

Finally, the Jurisdictional Statement in the Complaint invokes the Religious

Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to

2000cc-5.  RLUIPA is inapplicable in this case, because the only provisions of

RLUIPA that can support independent claims for relief apply exclusively to state and local regulations governing land use or institutionalized persons, and not to federal government action.  See Navajo Nation, 535 F.3d at 1077.  This case pertains exclusively to federal government action and has no discernible connection to state or local land use regulations or institutionalized persons. RLUIPA therefore provides no independent basis for the plaintiffs' claims.

## **CONCLUSION**

For the reasons above, the Court should dismiss all the claims of both plaintiffs in this action.

Date: October 22, 2009                    Respectfully submitted,

                                          TONY WEST
                                          Assistant Attorney General

                                          FLORENCE T. NAKAKUNI
                                          United States Attorney

                                          DERRICK K. WATSON
                                          Assistant United States Attorney

                                          VINCENT M. GARVEY
                                          Deputy Branch Director

                                          /s/ JAMES C. LUH
                                          JAMES C. LUH
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Ave NW
                                          Washington DC 20530
                                          Tel: (202) 514-4938
                                          Fax: (202) 616-8460
                                          E-mail: James.Luh@usdoj.gov
                                          Attorneys for Defendants