IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC.; MICHAEL REX "RAGING BEAR" MOONEY | ) ) ) ) | CIVIL NO. 09-00336 SOM/BMK |
| | ) | ORDER DISMISSING COMPLAINT |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ERIC H. HOLDER, JR., U.S. Attorney General; MICHELE LEONHART, Acting Administrator, U.S. Drug Enforcement Administration; FLORENCE T. NAKAKUNI, U.S. Attorney for the District of Hawaii, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DISMISSING COMPLAINT

I.      INTRODUCTION.

        Plaintiff Michael Rex "Raging Bear" Mooney and the

Oklevueha Native American Church of Hawaii, Inc., seek a

declaration that they be allowed to grow, use, possess, and

distribute cannabis free from federal drug-crime prosecution.

Plaintiffs allege that cannabis is used in their religion and

assert that their right to religious freedom is being infringed

on by United States drug laws, specifically 21 U.S.C. § 841.

        Defendants have moved for dismissal of the Complaint,

arguing that, on the face of the Complaint, the claims asserted

are not ripe, that Oklevueha lacks standing to assert claims on

behalf of its members, and that Plaintiffs fail to allege

sufficient claims in any event.  Because this court agrees that
the Complaint fails to allege ripe claims on the face of it,
Defendants' motion is granted and Plaintiffs' Complaint is
dismissed with leave to amend.

II.      BACKGROUND.

        Mooney founded Oklevueha and is its "Spiritual Leader."
See Complaint ¶ 2 (July 22, 2009).  Mooney and Oklevueha allege
that cannabis is consumed during religious ceremonies to enhance
spiritual awareness and to "occasion direct experience of the
divine."  See id. ¶ 13, 17.  Mooney and Oklevueha allege that the
consumption of cannabis is "an essential and necessary component
of [their] religion."  Id. ¶ 30.  They allege that Oklevueha
"members receive communion through cannabis in their religious
ceremonies and daily worship."  Id. ¶ 30.  There are no
allegations in the Complaint concerning the size of Oklevueha or
the amount and frequency of cannabis use during religious
ceremonies.

        Plaintiffs say that Oklevueha members fear criminal
prosecution for their cultivation, consumption, possession, and
distribution of cannabis.  Id. ¶¶ 32-33.  Mooney and Oklevueha
filed this action, seeking a declaration that "their consumption,
cultivation, possession[,] and distribution of cannabis . . . be
free from Federal penalty and . . . prohibiting the Defendants
from seeking criminal sentences and/or criminal and civil

sanctions and/or asset forfeiture under the Controlled Substances Act or any other provision of the U.S. Code." Complaint, Introduction. Mooney and Oklevueha assert that the United States' drug laws, specifically 21 U.S.C. § 841, violate the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb(4), and the First and Fourteenth Amendments of the United States Constitution.

To the extent that there may have been any question about whether the Complaint asserted a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, Plaintiffs clarified at the hearing that they are not asserting such a claim.

Plaintiffs allege that one member of Oklevueha has "recently had his cannabis seized from FedEx delivery" by United States drug enforcement authorities. See Complaint ¶ 31. Mooney has explained in an affidavit that this cannabis was intended for him and Oklevueha. See Affidavit of Michael Rex "Raging Bear" Mooney ¶ 9 (Jan. 27, 2010).

III.    STANDARD.

In relevant part, Rule 12(b)(1) of the Federal Rules of Civil Procedure reads: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen, Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the allegations of the complaint as insufficient on their face to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  Thornhill, 594 F.2d at 733. Defendants' motion to dismiss is a facial attack on this court's subject matter jurisdiction.

IV.     ANALYSIS.

        A.   Initial Matters.

        Despite Defendants' facial challenge to this court's subject matter jurisdiction, Plaintiffs have responded by submitting an affidavit by Mooney.  This court disregards that

4

affidavit for purposes of determining the facial challenge to this court's subject matter jurisdiction.

While the present order does not rely on Mooney's affidavit, the court did review it.  The affidavit raised concern on the court's part that Mooney was incriminating himself by claiming that cannabis allegedly seized by federal drug enforcement officers in June 2009 was "intended for myself and my Church."  See Mooney Aff. ¶ 9.  Accordingly, in this court's usual prehearing inclination, the court requested that Mooney be present at the hearing so that the court could ensure that he understood his right not to incriminate himself.  Far from attempting to dissuade Mooney from pursuing his claims, the court wanted to make sure that Mooney recognized the possible risks of going forward.

This is not the first lawsuit involving Mooney's attorney, Michael A. Glenn, in which an argument was made to this judge that a person using cannabis for religious purposes should not be subject to criminal prosecution.  The previous case was a criminal case, but, in the course of presiding over that criminal case, this judge learned that Glenn had represented THC Ministry in a separate civil matter.  See Religion of Jesus Church v. Ashcroft, Civil No. 04-00200 TSZ/LEK (D. Haw. 2004).  In the previous criminal case before this judge, evidence was introduced indicating that THC Ministry, which was short for "The Hawaii

5

Cannabis Ministry," advocated the legalization of the consumption of cannabis.  Also in the previous criminal case before this judge, Glenn called as a witness Roger Christie, a person he was representing in the separate civil case.  Christie said he considered Glenn his attorney even in the criminal case and was prepared to make incriminating statements concerning cannabis in the criminal case.  Ultimately, this court appointed separate counsel for Christie.  After consulting that new counsel, Christie exercised his Fifth Amendment rights and declined to testify further in the criminal case.  This judge is also under the impression from prior proceedings that Glenn was a minister in THC Ministry.

Given the court's prior history with Glenn and the submission of Mooney's affidavit essentially admitting to a possible drug crime, this court was concerned that Mooney might not understand the potential for a conflict of interest with Glenn.  The applicable rules of professional conduct provide, "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation."  Haw. R. Prof. Conduct 1.7(b). See also id. cmt. [1] ("Loyalty is an essential element in the

lawyer's relationship to a client."). Mooney should be advised of the potential conflict of interest. That is, Mooney should be told that, in filing this Complaint on Mooney's behalf and seeking a determination that, for religious reasons, Plaintiffs should be free from federal drug statutes, Glenn may be seeking relief that will benefit not just Mooney, but also another client and/or himself. This court is not saying that Glenn actually has any bad intention. Nor does this court have any reason to doubt Glenn's actual loyalty to Mooney. This court raises its concerns in light of its understanding about Glenn's activities and the risks Glenn is allowing Mooney to take by submitting an incriminating affidavit. Appropriate discussions should be conducted between Mooney and Glenn and/or Mooney and independent counsel, and any necessary written waivers should be obtained.

B.   <u>The Claims, As Alleged, Are Not Ripe.</u>

In 1990, the Supreme Court held that the Free Exercise Clause of the First Amendment does not prohibit the Government from burdening religious practices through generally applicable laws. <u>See</u> <u>Employment Div., Dept. of Human Res. of Or. v. Smith</u>, 494 U.S. 872 (1990). Congress responded by enacting the Religious Freedom Restoration Act of 1993 ("RFRA"), which "prohibits the Federal Government from substantially burdening a person's exercise of religion, unless the Government 'demonstrates that application of the burden to the person'

7

represents the least restrictive means of advancing a compelling interest."  Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 423-24 (2006) (quoting 42 U.S.C. § 2000bb-1(b)).  Under RFRA, "the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability.'"  Id. (quoting 42 U.S.C. § 2000bb-1(a)).  The only exception recognized by the act arises when the Government satisfies a "compelling interest test."  That is, the Government must "'demonstrat[e] that application of the burden to the person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'"  Id. (quoting 42 U.S.C. § 2000bb-1(b)).

A person whose religious practices are burdened in violation of RFRA "may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief."  Id. (quoting 42 U.S.C. § 2000bb-1(c)).  The Ninth Circuit has held that, to establish a prima facie violation of RFRA, a plaintiff must present evidence sufficient to allow a trier of fact to rationally find that the activities the plaintiff claims are burdened by the Government action are an "exercise of religion" and that the Government action "substantially burdens"

the plaintiff's exercise of religion.  Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1068 (9th Cir. 2008).

The Controlled Substances Act, 21 U.S.C. §§ 801-971, classifies marijuana, which Plaintiffs say should be called "cannabis," as a controlled substance and makes it unlawful to manufacture, distribute, dispense, or possess the drug except as otherwise provided in the statute.  See Raich v. Gonzales, 500 F.3d 850, 854-55 (9th Cir. 2007).  Plaintiffs seek a declaration that their religious rights to use cannabis cannot be restrained by the Controlled Substances Act or other federal laws.

Defendants seek dismissal of the Complaint, arguing that the preenforcement claims are not ripe on their face. Plaintiffs filed a six-page opposition to this motion that contains almost no legal analysis.

"[R]ipeness is peculiarly a question of timing, designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (internal citations and quotations omitted).  "Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."  Id.

Ripeness "contains both a constitutional and a prudential component."  Id.

>    1.   Constitutional Component.

The Ninth Circuit has noted that the constitutional component of the ripeness doctrine is often treated under the standing rubric and, "in many cases, ripeness coincides squarely with standing's injury in fact prong."  Id.  In examining "whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing."  Id. at 1139. In examining whether a declaratory judgment action is ripe for adjudication, this court evaluates  "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1124 (9th Cir. 2009) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

When a litigant brings a preenforcement challenge to a statute, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" will satisfy the ripeness requirement.  Thomas, 220 F.3d at 1139.  "Rather, there must be a genuine threat of imminent prosecution."  Id. (citation and quotations omitted).  Determining the genuineness of a threat

10

of prosecution involves a review of three factors: "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." Id.; accord Stormans, 586 F.3d at 1122.

The Ninth Circuit has stated that a "general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." Thomas, 220 F.3d at 1139. Although the Complaint generally avers that Plaintiffs consume cannabis during religious ceremonies and as part of their "daily worship," the Complaint does not allege when, where, and under what circumstances Plaintiffs intend to consume cannabis. Given the lack of factual allegations in the Complaint concerning how cannabis is used in connection with Plaintiffs' religion, this court determines that Plaintiffs fail to sufficiently allege a "concrete plan." This court is not ruling that Plaintiffs will not be able to sufficiently allege a "concrete plan," only that the present Complaint fails to do so. In so ruling, this court is disregarding counsel's statements at the hearing indicating that Mooney's religion may have been established for the sole purpose of consuming cannabis. Because Defendants have brought a facial challenge to this court's

subject matter jurisdiction, this court is not examining material outside the four corners of the Complaint.

With respect to the second factor--a specific threat of enforcement directed to Plaintiffs--the record is devoid of any such threat.  The Ninth Circuit has stated that the threat must be "credible, not simply imaginary or speculative."  Thomas, 220 F.3d at 1140 (citation and quotations omitted).  "When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court."  Id.  Although Plaintiffs allege that they fear prosecution, they do not identify a single instance in which one of the members of Oklevueha has been prosecuted or threatened with prosecution for a cannabis-related violation.  At best, Plaintiffs allege that Mooney's cannabis was seized in June 2009.  The Complaint was filed on July 22, 2009.  Plaintiffs do not allege that Mooney or anyone else associated with Oklevueha has even been threatened with prosecution in connection with that seizure to date.

At the hearing on the present motion, Plaintiffs appeared to be arguing that they may not have known that cannabis was being shipped to them.  This argument appears to undercut any claim to ripeness or injury.  Plaintiffs can hardly claim injury or imminent prosecution based on the seizure of an illegal

substance they were unaware was being shipped to them.  In any event, on this motion to dismiss, the court focuses on the allegations contained in the Complaint, not on extraneous assertions.  This court of course recognizes that a person "does not have to await the consummation of a threatened injury to obtain preventive relief," particularly in a First Amendment challenge that seeks to avoid the chilling effects of sweeping restrictions.  See Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003).  But a claimant does need more than concern or speculation.

With respect to the third factor--the history of enforcement under the statute--the Complaint is again devoid of allegations as to the enforcement of the statute.  While the court's own experience is that the Government does prosecute violations of the Controlled Substances Act, the court is in no position to guess how frequently cannabis is seized or how often and under what circumstances cannabis seizures lead to criminal charges.

The general allegations concerning cannabis use, possession, and distribution, including references to the use of cannabis in daily worship and during religious ceremonies, do not describe a concrete plan to violate a federal drug law that makes the matter ripe for adjudication.  This court cannot tell, for example, whether Plaintiffs merely grow a couple of cannabis

13

plants on church property and whether Mooney himself then uses the cannabis from those plants while performing his "daily worship."  In such circumstances, it might be unlikely that Plaintiffs' activities would come to the attention of federal drug authorities.  On the other hand, if Plaintiffs are importing pounds of cannabis every month for use by hundreds of church members during large religious ceremonies, the likelihood of prosecution for a federal drug crime may increase.

Although the Complaint alleges that federal drug authorities have seized a package containing cannabis in June 2009, the Complaint does not allege that Plaintiffs intend to import cannabis again such that federal drug authorities might again seize the cannabis.

Plaintiffs' citation to <u>O Centro Espirita</u> is unavailing.  In <u>O Centro Espirita</u>, the Government conceded that a religious sect was sincerely exercising its religion by receiving communion through drinking *hoasca*, a hallucinogen regulated under the Controlled Substances Act.  546 U.S. at 423.  The sect had about 130 members who received communion through *hoasca* as a central tenet of their faith.  <u>Id.</u> at 425.  Customs inspectors had intercepted a shipment of three drums of *hoasca* being sent to the sect.  An investigation revealed that fourteen prior shipments of *hoasca* had been sent to the sect.  When investigators threatened the sect with prosecution, the sect

filed suit, seeking to prevent the enforcement of the Controlled Substances Act as violative of RFRA.  Id. at 425-26.  On review, the Supreme Court determined that the Government had failed to demonstrate (at the preliminary injunction stage) that a compelling interest barred the sacramental use of *hoasca*.  Id. at 439.

Plaintiffs' citation to O Centro Espirita, without more, is insufficient to establish that their case is ripe.  O Centro Espirita certainly teaches that, under some circumstances, preindictment challenges to the Controlled Substances Act as violative of RFRA are ripe for review.  However, in this case, Plaintiffs assert conclusions without supporting factual allegations.  There is no established history of importation of cannabis analogous to the history in O Centro Espirita.  To the contrary, the Complaint only alleges that one package containing an unidentified amount of cannabis was seized.  Interpreting the facts in the light most favorable to Plaintiffs for ripeness purposes, the court assumes that this package was being sent to Plaintiffs with their knowledge (which Plaintiffs appeared to dispute at the hearing).  This single shipment of cannabis in the past does not indicate a "concrete plan" to have cannabis shipped in the future.  Notably, while the Complaint seeks to prevent future seizures of cannabis, it does not pray for the return of the seized cannabis.  The seizure of a single package containing

an unidentified amount of cannabis is insufficient to support a

determination of ripeness based on the allegations actually made

in the Complaint.

       C.   Prudential Component.

       Even if Plaintiffs had asserted a ripe claim in the

constitutional sense, this court would dismiss the Complaint

based on the prudential component of the ripeness doctrine.  As

the en banc Ninth Circuit court noted in Thomas, the prudential

"analysis is guided by two overarching considerations: the

fitness of the issues for judicial consideration and the hardship

to the parties of withholding consideration."  Thomas, 220 F.3d

at 1141.

       1.   Fitness for Judicial Review.

       This case is not fit for judicial consideration, as the

allegations of the Complaint are "remarkably thin and sketchy."

Id. at 1141.  In Thomas, the Ninth Circuit examined a

preenforcement challenge to Alaska housing laws prohibiting

discrimination on the basis of marital status.  The landlords who

filed the action believed that cohabitation before marriage was a

sin that their religion did not tolerate.  The landlords alleged

that they had previously refused to rent their apartments to

unmarried couples and that they would refuse to do so in the

future.  No prospective tenant had complained about the landlords

to state authorities.  The state had not investigated the

landlords' rental practices, and there was no threatened or
imminent enforcement action against the landlords.  The landlords
filed suit seeking a declaration that the Alaskan
nondiscrimination laws based on marital status infringed on their
First Amendment rights to freely exercise their religion and to
free speech.  Id. at 1137-38.

        The Ninth Circuit determined that the landlords'
Complaint was not ripe.  The Ninth Circuit ruled that the
landlords lacked constitutional ripeness, as the landlords were
not faced with a realistic danger of sustaining a direct injury
as a result of the nondiscrimination statutes.  Id. at 1141.  The
Ninth Circuit went on to say that, even assuming the landlords
had presented a ripe case or controversy in the constitutional
sense, jurisdiction was lacking given prudential concerns: "The
manner in which the intersection of marital status discrimination
and the First Amendment is presented here, devoid of any specific
factual context, renders this case unfit for judicial
resolution."  Id.  Ruling that a "concrete factual situation is
necessary to delineate the boundaries of what conduct the
government may or may not regulate," the Ninth Circuit identified
no facts demonstrating that the laws, as applied, would infringe
on constitutional rights.  The en banc court stated that the
"case was a classic one for invoking the maxim that we do not
decide constitutional questions in a vacuum."  Id.

17

Plaintiffs' Complaint essentially asks this court to decide constitutional questions in a vacuum.  The Complaint contains no factual allegations describing how and when cannabis is used during religious ceremonies.  The Complaint does not allege how many people are involved in the religious ceremonies or how much cannabis is consumed at the ceremonies.  Nor does the Complaint allege how the cannabis is consumed in conjunction with "daily worship."  The Complaint fails to allege how Plaintiffs acquire cannabis and how and when they intend to do so in the future.  It is not, for example, clear whether Plaintiffs must use cannabis obtained from third parties, as opposed to growing marijuana themselves.  Without the missing basic factual allegations, the court cannot determine from the four corners of the Complaint whether the controversy is ripe.

It appears from the relief requested by Plaintiffs that they essentially want immunity from any and all prosecutions involving cannabis.  That is, Plaintiffs seek a declaration that they can grow, use, possess, and distribute cannabis without fear of criminal or civil repercussions under the Controlled Substances Act.  But Plaintiffs' sketchy allegations prevent the court from delineating what the Government can and cannot regulate with respect to Plaintiffs' activities.  This court cannot tell, for example, whether Plaintiffs are seeking a declaration that they may import thousands of pounds of cannabis

18

every month and sell the cannabis in a store and via a website, or whether they are asking to be allowed to pass a single cigarette among numerous members during their religious ceremonies.

Even in <u>O Centro Espirita</u>, 546 U.S. at 427, the Court did not grant a blank check to the plaintiffs who challenged the application of the Controlled Substances Act.  The Court held that the lower courts had not erred in determining that the Government failed to demonstrate, at the preliminary injunction stage, a compelling interest barring the religious sect's sacramental use of *hoasca*.  However, the injunction required the church to import the *hoasca* pursuant to federal permits, to restrict control over the *hoasca* to church authorities, and to warn members of the dangers of *hoasca*.

2.   <u>Hardship to the Parties.</u>

The hardship to the parties if this court were to dismiss this matter is minimal.  First, because there is no identified immediate threat of prosecution, the dismissal does not appear to prejudice Plaintiffs.  More importantly, however, the dismissal is without prejudice.  Plaintiffs may file an amended complaint no later than March 22, 2010, that cures the defects of the original Complaint by setting forth facts--as opposed to conclusions--that establish an entitlement to relief and by clarifying the scope of the relief requested.  <u>See</u>

19

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>Bell Atl. Corp.</u>
<u>v. Twombly</u>, 550 U.S. 544, 555 (2007).

The court recognizes that it could potentially continue
the Government's motion and allow limited discovery regarding
jurisdictional issues.  The nature of the case and the facial
challenge to this court's subject matter jurisdiction, however,
make dismissal more appropriate.  With dismissal, Mooney will not
face an immediate deposition or other discovery in which he could
potentially further incriminate himself.  Before such discovery
obligations kick in, the court encourages Mooney to consider very
carefully how he wants to pursue this matter.

V.          <u>CONCLUSION.</u>

For the foregoing reasons, the court dismisses the
Complaint.  This dismissal of the Complaint on ripeness grounds
makes it unnecessary for the court to rule on the other arguments
raised by Defendants.

Plaintiffs may file an Amended Complaint no later than
March 22, 2010.  Any Amended Complaint must cure, if it can, the
deficiencies outlined by this order, as well as the other alleged
deficiencies raised by Defendants in their motion.  If Plaintiffs

fail to file an Amended Complaint by that date, the Clerk of Court is directed to enter judgment in favor of Defendants.


            IT IS SO ORDERED.

            DATED: Honolulu, Hawaii, February 23, 2010.



                          /s/ Susan Oki Mollway
                         Susan Oki Mollway
                         Chief United States District Judge


Oklevueha Native Am. Chuch v. Holder; Civil No. 09-00336 SOM/BMK; ORDER DISMISSING COMPLAINT