MICHAEL A. GLENN
Attorney at Law #6480
1188 Bishop Street Suite 3101
Honolulu, Hawaii 96813
(808) 523-3079

Attorney for Plaintiffs
OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC.
MICHAEL REX "RAGING BEAR" MOONEY

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC.; MICHAEL REX "RAGING BEAR" MOONEY,<br><br>Plaintiffs,<br><br>vs.<br><br>ERIC H. HOLDER, JR., as U.S. Attorney General; MICHELE LEONHART, as Acting Administrator of the U.S. Drug Enforcement Administration; EDWARD H. KUBO, JR., as U.S. Attorney for the District of Hawaii,<br><br>Defendants. | Civil No. 09-00336 SOM BMK<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF; AMENDED SUMMONS** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**

**AND FOR**

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Comes now Plaintiffs OKLEVUEHA NATIVE AMERICAN CHURCH OF

HAWAII, INC. and MICHAEL REX "RAGING BEAR" MOONEY, by and through their undersigned attorney, and hereby file their First Amended Complaint in this action for declaratory, injunctive and other relief, and hereby allege and aver as follows:

## INTRODUCTION

The Plaintiffs are the OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC. (hereafter "The NAC"), an organized religious entity/church, and it's founder and President MICHAEL REX "RAGING BEAR" MOONEY (hereafter "Mr. Mooney").

The NAC is an earth-based healing religion. The main and primary purpose of the NAC is to administer Sacramental Ceremonies (pursuant to their Code of Ethics). In other words, the Church only exists to espouse the virtues of, and to consume, entheogens.

The Plaintiffs are suing for an Order declaring their consumption, cultivation, possession and distribution of cannabis in, for, and during their religious ceremonies to be free from Federal criminal penalty and for an order prohibiting the Defendants from seeking criminal sentences and/or criminal and civil sanctions and/or asset forfeiture under the Controlled Substances Act or any other provision of the U.S. Code.

## PARTIES

1. Plaintiff OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC. is, and at all times relevant and material herein was, a local State of Hawaii independent chapter of a national organized religion, the Native American Church.

2. Plaintiff MICHAEL REX "RAGING BEAR" MOONEY is, and at all times relevant and material herein was, a resident of the County of Honolulu, State of Hawaii. He is a fully authorized Spiritual Leader (commonly known as a *Medicine Man*) and the Founder, President and Medicine Custodian of The NAC.

3. Defendant ERIC H. HOLDER, JR. is Attorney General for the United States of America, sued in official capacity, in which capacity he is responsible for enforcement of the Controlled Substances Act.

4. Defendant MICHELE LEONHART is the Acting Administrator of the United States Drug Enforcement Administration, sued in official capacity, in which she is responsible for enforcing and administering the CSA and for promulgating regulations implementing the CSA.

5. Defendant EDWARD H. KUBO, JR., is the United States Attorney for the District of Hawaii, sued in official capacity, in which he is responsible for prosecutions under the CSA in this District.

6. All of the facts, allegations and averments contained herein occurred within the State of Hawaii.

**JURISDICTION**

7. This Court has jurisdiction pursuant to 28 USC § 1331 because the action arises under the laws and Constitution of the United States of America. Plaintiffs seek a determination under the standards of the Religious Freedom Restoration Act ("RFRA") 42 USC §§ 2000bb-2000bb(4), The Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 USC §2000cc(5)(7) and the First and Fourteenth Amendments to the US Constitution of the lawfulness and constitutionality of Defendants' interpretation of the Controlled Substances Act ("CSA") 21 USC § 801-971, and its implementing regulations as applied to Plaintiffs. This Court is authorized to grant declaratory relief by the Declaratory Judgment Act, 28 USC §§ 2201, 2202. This Court is authorized to grant preliminary and permanent relief under Federal Rule of Civil Procedure 65.

## VENUE

8. Venue is proper in this Court under 28 USC § 1391(e) and § 1402(a)(1) because all Defendants are officers and employees of the United States of America and its agencies and were at all relevant times acting in their official capacities and under color of legal authority and at least one Defendant officially resides in this District and the cause of action arose in this District and all Plaintiffs reside in this District.

## FACTUAL ASSERTIONS

9. The NAC is registered as a State of Hawaii Nonprofit Corporation.

10. Mr. Mooney is of Seminole Native American ancestry.

11. Mankind's religious use of entheogens is known to exist from antiquity, and stretches across the globe.

12. With the advents of European colonization of North and South America, the health, culture, and social organization of the American Native indigenous people and their earth based religious beliefs were all but destroyed by 1890.

13. In the 1800's, the United States government implemented an American Native Genocide policy with Manifest Destiny rationality. Whereupon the killing of the American Native was not only tolerated, but encouraged by levying a bounty for every proven American Native person murdered.

14. During the 1800's, because of the United States Government's unconstitutional removal of indigenous American Native people from their historically sacred lands and the placing of American Native children in church-controlled schools, a total annihilation of the American Native culture was nearly accomplished by 1890.

15. The Wounded Knee Massacre was the final coordinated effort of the government-sanctioned murder of American Native spiritual practitioners by the United States Army.

16. Starting in the mid-1800's, various Native American spiritual leaders encouraged the return of indigenous American Native spiritual practices under the

most grievous of circumstances.

17. These leaders, such as Lakota Sioux Red Cloud (1822-1909), Comanche Quanah Parker (1844-1911), Paiute Wovoka (1856-1932) among others, formulated a set of moral instructions that included abstinence from addictive substances (primarily alcohol), deviate sexual activities, matrimonial infidelity and prohibitions against acting out greedy and prideful behaviors that propagated deceit, vengeance and violence.

18. These peoples discovered that the ingestion of peyote as a Sacrament fostered charity and humility that enhanced honest, forgiving and peace loving activities. Those who adhered to these behavior codes and who participated in ceremonies involving peyote showed a tendency to live a disciplined and productive life.

19. Today there are presently over 100 branches of the Native American Church incorporated in more than 24 states. It is estimated that there are more than 500,000 members of the Native American Church, although membership or attendance is not well recorded.

20. The Plaintiff NAC, however (and as a condition of their Federally approved and allowed use of Peyote), maintains accurate records of its authorized participants and Medicine People, as does all Oklevueha NAC Branches.

21. The storage of this information is collected and maintained to provide a

clear and concise paper trail that will insure all Oklevueha NAC practitioners receive protection to worship, practice, and teach in the manner the spirit moves them.

22. Each branch of the Oklevueha Native American Church is an independent branch and is responsible for its own Church management, ceremonies, and Medicine People.

23. The herb, known as *Rosa Maria* amongst certain North American Indian tribes, and referred to as Cannabis by Plaintiffs, has been traditionally consumed as sacrament and for therapeutic needs by Native American peoples. Cannabis was particularly consumed in times of shortage of these tribes' primary sacrament/ great-medicine of choice – Peyote, or more specifically, *Lophophora Williamsii*.

24. Members of The NAC, in addition to and in the substitute for their primary entheogenic sacrament, Peyote, also consume Cannabis as a sacrament/ eucharist in their religious ceremonies and rites.

25. While Peyote is the significant sacrament for Plaintiffs, The NAC honors and embraces all entheogenic naturally occurring substances, including Ayahuasca, Cannabis (aka Rosa Maria and Santa Rosa), Iboga, Kava, Psilocybin, San Pedro, Soma, Teonanacatyl, Tsi-Ahga, and many others.

26. The purpose of Plaintiff's cannabis use in religious ceremonies is similar to the purpose of many other intensive religious practices - to enhance spiritual

awareness or even to occasion direct experience of the divine.

27. The primary purpose of The NAC is to administer Sacramental Ceremonies pursuant to their Code of Ethics. In this regard, The NAC's use of cannabis is similar to practices such as meditation, intensive prayer, flagellation and fasting, which form a crucial part of many religious traditions.

28. Any risks to The NAC's members from their use of cannabis are relatively low and contained, and any alleged risks of the use of this non-toxic herb are insufficiently compelling to prohibit The NAC from practicing its religion.

29. There are many religious practices, across numerous faiths, which are accepted and lawful and yet create some risk of harm for the individual practitioners while simultaneously these practices bestow spiritual benefits that those outside of the particular tradition might have trouble comprehending. The Plaintiff's religious use of cannabis is similar.

30. Plaintiff's consumption of cannabis is during religious ceremony and is an ordered, guided and calm process, led by those who are experienced, trained, and titled within The NAC.

31. The NAC's supervision, and the ceremonial setting, minimize the risk that members might engage in any harmful behavior while under the influence of cannabis.

32. The dosage of cannabis is controlled by an experienced and responsible

church member, and The NAC's religious strictures against drinking to excess and using harmful drugs and substances virtually eliminates the risks associated with polysubstance abuse.

33. The NAC's use of cannabis is embedded within a set of deeply rooted and sincere religious beliefs and traditions. This, along with the guidance of religious leaders, minimizes any psychological risks of consuming cannabis.

34. The NAC's ceremony and tradition help members derive religious benefit from the spiritual states of awareness they may experience while under the influence of cannabis.

35. The NAC's use of cannabis in religious ceremonies emphasizes the proper "set and setting" and make it much more likely that church member will experience something spiritual, rather than anxiety or disorientation.

36. The NAC's use of cannabis is somewhat similar to their controlled ritual use of peyote, and in the beneficial effects the use has on their members.

37. Mr. Mooney uses cannabis sacrament daily, and The NAC uses cannabis in its "sweats," which occur approximately twice a month during the new moon and the full moon. These sweats are only open to members of The NAC and take place at various private locations on Oahu.

38. Mr. Mooney will continue to consume cannabis daily and will continue to participate in sweats every month, even if the Defendants prevail in this case.

The NAC will continue to use cannabis as its sacrament, and plans to continue offering its members the use of cannabis and peyote as sacraments for daily worship and for lunar cycle sweats.

39. Mr. Mooney also possesses a State of Hawaii Department of Public Safety Narcotics Enforcement Division Medical Marijuana Registry Patient Identification Certificate. This allows him to acquire, possess, cultivate and consume cannabis without State criminal penalty in the State of Hawaii.

40. Plaintiffs in this case acquire their cannabis by cultivating it or acquiring it from other churches, caregivers or other state-sanctioned methods.

41. The NAC has approximately 250 members in Hawaii, all of which consume cannabis in their religious ceremonies.

42. Peyote is used by the Plaintiffs, with the Defendant's full approval, by all members of The NAC. Yet the Defendants insist that the US Government has a compelling interest in completely prohibiting cannabis use by Plaintiffs.

43. Unless the Defendants can show a significant and essential difference between The NAC's peyote use and its cannabis use, the Government's claim of a compelling interest to prohibit cannabis is defeated by their own treatment of peyote.

44. The Federal Government does not have a compelling interest in prohibiting a religious practice that entails a relatively low risk of harm.

45. Prohibiting consenting adults from incurring some risk of harm to themselves in the context of religious rituals or practices does not, in itself, serve a compelling governmental interest.

46. The Defendants consider the Plaintiffs to be criminals solely because of their religious/sacramental/ceremonial cannabis use. They provide for no exception and have utterly refused to return the seized cannabis sacrament to the Plaintiffs. Indeed, Defendants have fought for the dismissal of this instant suit.

47. The Plaintiffs consume, possess, cultivate and/or distribute cannabis as sanctioned and required by their legitimate religion and sincere religious beliefs, and as such, their free exercise of religion is protected by RFRA and the First Amendment of the U.S. Constitution.

48. As an essential and necessary component of the Plaintiffs' religion, The NAC members receive communion through cannabis in their religious ceremonies and daily worship. The NAC considers cannabis, in addition to peyote, to be sacred or most holy.

49. Mr. Mooney has already and recently had cannabis intended for The NAC seized from FedEx delivery by United States Federal drug enforcement authorities in Hawaii.

50. Mr. Mooney is of the information and belief that approximately one pound of cannabis was seized by Defendants before its delivery to him. The value

of this cannabis is approximately $7,000, and Plaintiffs demand that they be compensated for the Defendants' theft of this cannabis or have the cannabis returned to them.

51. At least one of the Defendants in this case, the DEA, has this very month raided the THC Ministry, a Big Island of Hawaii church that consumes cannabis for religious use, and Plaintiffs have filed suit to prevent the very real threat of such a Federal drug raid from occurring to their Church.

52. The NAC's members rightfully and justifiably fear for their ability to continue to cultivate, consume, possess and distribute cannabis sacrament without the exceedingly significant burden placed upon their lives by being branded criminals mandated for Federal imprisonment and whose real property and assets can be seized civilly with no applicable legal defense.

53. The threat that Mr. Mooney and members of The NAC will be criminally prosecuted is exceedingly real, and any threat of criminal prosecution of American citizens for engaging in religious devotional practices and communion of sacrament during their law-abiding lives substantially burdens the practice of the Plaintiffs' religions within the meaning of RFRA/RLUIPA and the U.S. Constitution.

## COUNT 1

### Violation of the Religious Freedom Restoration Act

54. Plaintiffs re-allege and incorporate by reference herein the allegations as set forth in paragraphs 1-53 of this Complaint.

55. Defendants' position that even the Plaintiffs' religious sacramental use of cannabis is prohibited and punishable by imprisonment and asset forfeiture violates the rights of Plaintiffs' to freely exercise their legitimate religion absent a compelling state interest in violation of Plaintiff's statutory rights embodied in RFRA, 42 USC § 2000bb-1(a).

56. The Defendants lack any compelling interest to totally prohibit Plaintiffs' cannabis use and possession; and total prohibition (especially in an island State that registers and accepts therapeutic cannabis users) can never even approach the least restrictive means to achieve any alleged Federal compelling interest.

## COUNT 2

### Violation of the American Indian Religious Freedom Act

57. Plaintiffs re-allege and incorporate by reference herein the allegations as set forth in paragraphs 1-53 of this Complaint.

58. 42 USC § 1996 requires the policy of the United States be to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession

of sacred objects, and the freedom to worship through ceremonials and traditional rites.

59. Defendants' interpretation and threatened application of the CSA against legitimate cannabis sacrament religions for cannabis possession and cultivation and distribution violates The NAC's right to free exercise of religion and is in direct opposition to the American Indian Religious Freedom Act.

## COUNT 3

### Violation of the Equal Protection Clause of the U.S. Constitution

60. Plaintiffs re-allege and incorporate by reference herein the allegations as set forth in paragraphs 1-53 of this Complaint.

61. Defendants are currently prohibited from arresting the members of The NAC and Mr. Mooney for their cultivation, possession, use and distribution of the controlled substance Peyote.

62. Defendants are currently prohibited from arresting the members of the O Centro Espirita Beneficiente Uniao Do Vegetal (UDV-USA) religion for their importation, possession, use and distribution of large quantities of their entheogen (produced by the union of two rain-forrest vines), the powerfully hallucinogenic, DMT-infused compound Ayahoasca. (See Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal, 546 U.S. 418 (2006).

63. The Defendants' threatened prosecution of Plaintiffs for cannabis

cultivation, possession, use and/or distribution, while allowing the consumption of other controlled substances, violates Plaintiffs' Constitutional Fifth and Fourteenth Amendment rights to equal protection under the law.

## COUNT 4

### Violation of the First Amendment of the U.S. Constitution

64. Plaintiffs re-allege and incorporate by reference herein the allegations as set forth in paragraphs 1-53 of this Complaint.

65. The Plaintiffs' right to free exercise of religion is being violated by the federal prohibition of cannabis for any and all religious use.

## COUNT 5

### Theft/Conversion

66. Plaintiffs re-allege and incorporate by reference herein the allegations as set forth in paragraphs 1-53 of this Complaint.

67. The actions of Defendants in seizing and failing to return the Plaintiffs' property, namely one pound of Sacramental Cannabis, constitute the theft and/or conversion of the personal property of the Plaintiffs.

## COUNT 6

### Declaratory Judgment

68. Plaintiffs re-allege and incorporate by reference herein the allegations as set forth in paragraphs 1-53 of this Complaint.

69. Plaintiffs have suffered and will continue to suffer irreparable harm due to Defendants' challenged actions and practices averred to in this Complaint.

70. Plaintiffs have Constitutional and statutory rights to consume cannabis for their religious and even their therapeutic needs.

71. The Defendants' actions and statements have created and are creating well-founded fears that Defendants will attack Plaintiffs' persons, medicines, sacraments, health, freedoms, liberties, property, and free speech, thus trampling religious rights and perhaps even exacerbating serious medical conditions and constituting irreparable harm.

72. Defendants' interpretation of the CSA as forbidding the sacramental use of cannabis by Plaintiffs, as explained in the above counts, and their theft of Plaintiffs' property (cannabis), creates an actual controversy within the meaning of 28 USC § 2201(a).

73. For these reasons, Plaintiffs are entitled to a declaratory judgment that all of the above described actions, conduct and threats of actions of Defendants involving Plaintiffs' cannabis were, are and will be unlawful and to such additional declaratory relief as described in Plaintiffs' Prayer for Relief.

## COUNT 7

### Injunctive Relief

74. Plaintiffs re-allege and incorporate by reference herein the allegations as

set forth in paragraphs 1-53 of this Complaint.

75. The United States Attorney for the District of Hawaii will not return the cannabis that was seized from the Plaintiffs.

76. The Defendants must be prohibited from arresting or prosecuting Plaintiffs, or seizing the sacraments, medicine and assets of the Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment as follows:

A. Issue a Preliminary Injunction during the pendency of this action and a Permanent Injunction enjoining Defendants from arresting or prosecuting Plaintiffs, seizing their cannabis, forfeiting their property, or seeking civil or administrative sanctions against them for their activities with respect to any of the following:

(1) The possession of sacramental cannabis for individual religious use;

(2) The possession of therapeutic cannabis for individual use in compliance with State of Hawaii Revised Statutes;

(3) The ability to obtain cannabis from other Native American Churches;

(4) The ability to obtain cannabis from any other legal source in compliance with State of Hawaii Revised Statutes;

(5) The ability of to cultivate and distribute cannabis to any person or entity in compliance with State of Hawaii Revised Statutes; and

(6) The cultivation of cannabis for therapeutic and religious needs;

B. Compel the immediate return of the cannabis that the Defendants have stolen/seized from Plaintiffs, or its monetary value; and

C. Declare that enforcement of the CSA is unconstitutional to the extent that it purports to prevent Plaintiffs from possessing, obtaining, manufacturing, cultivating, processing, consuming, providing and/or distributing cannabis for Plaintiffs' personal religious use;

D. Award Plaintiffs' Attorney's reasonable fees and costs pursuant to RFRA and 5 USC § 504;

E. For such other and further relief, whether at law or equity, as the Court deems just and proper under the circumstances.

Dated at Honolulu, Hawaii; March 22, 2010

_____
MICHAEL A. GLENN, ESQ.
Attorney for Plaintiffs

HID 440 (AO 440) (08/08) Civil Summons

# UNITED STATES DISTRICT COURT
for the

District of Hawaii

| OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC.; MICHAEL REX "RAGING BEAR" MOONEY | ) ) ) |
|---|---|
| Plaintiff | ) ) |
| v. | ) ) Civil Action No.  09-00336 SOM BMK |
| ERIC HOLDER, JR., as U. S. Attorney General; MICHELE LEONHART, as Acting Administrator of the U. S. Drug Enforcement Administration; EDWARD H. KUBO, JR., as U. S. Attorney for the District of Hawaii | ) ) ) ) ) ) |
| Defendant | ) |

Amended   **Summons in a Civil Action**

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within **60** days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Sue Beitia
Name of clerk of court

Date: **MAR 2 2 2010**

Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*