IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

OKLEVUEHA NATIVE AMERICAN      )    CIVIL NO. 09-00336 SOM/BMK
CHURCH OF HAWAII, INC.;        )
MICHAEL REX "RAGING BEAR"      )    ORDER GRANTING IN PART AND
MOONEY                         )    DENYING IN PART MOTION TO
                               )    DISMISS FIRST AMENDED
          Plaintiffs,          )    COMPLAINT
                               )
     vs.                       )
                               )
ERIC H. HOLDER, JR., U.S.      )
Attorney General; MICHELE      )
LEONHART, Acting               )
Administrator, U.S. Drug       )
Enforcement Administration;    )
FLORENCE T. NAKAKUNI, U.S.     )
Attorney for the District of   )
Hawaii,                        )
                               )
          Defendants.          )
_____ )


ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS FIRST AMENDED COMPLAINT

I.        INTRODUCTION.

          Plaintiffs Michael Rex "Raging Bear" Mooney and the

Oklevueha Native American Church of Hawaii, Inc., allege that

cannabis is used in their religion and assert that their right to

religious freedom is being infringed on by United States drug

laws, specifically 21 U.S.C. § 841.  On February 23, 2010, the

court dismissed Plaintiffs' Complaint, ruling that their claims

were not sufficiently ripe to justify the bringing of a

preenforcement challenge to federal drug laws.  Plaintiffs were

given leave to file an amended complaint curing the deficiencies.

On March 22, 2010, Plaintiffs filed a First Amended Complaint that reasserts a right to cultivate, use, possess, and distribute cannabis free of federal restrictions.  The Amended Complaint also seeks the return of or compensation for cannabis allegedly seized by the Government in Hawaii last year when it was sent via FedEx.

Defendants have moved for dismissal of the First Amended Complaint, arguing that the claims are not ripe on their face, that Oklevueha lacks standing to assert claims on behalf of its members, and that Plaintiffs fail to allege sufficient claims in any event.  Because this court agrees that the First Amended Complaint has not cured the deficiencies of the initial Complaint and fails to set forth a facially ripe claim regarding Plaintiffs' challenge to federal laws that the Government has not sought to enforce against them, Defendants' motion is granted with respect to that claim.  To the extent the First Amended Complaint asserts tort claims for the return of or compensation for the allegedly seized cannabis, those claims are dismissed based on the Government's sovereign immunity and the Supremacy Clause.  That leaves for further adjudication only the return of or compensation for the seized cannabis under the Religious Freedom Restoration Act of 1993.

II.      BACKGROUND.

Although the original preenforcement claim was dismissed with leave to amend to allow Plaintiffs to allege facts demonstrating a ripe claim, the First Amended Complaint added very little detail addressing the ripeness of the preenforcement claim.

Mooney is the "Spiritual Leader" and founded Oklevueha "to espouse the virtues of, and to consume entheogens," psychoactive substances used in a religious, shamanic or spiritual contexts.  See First Amended Complaint, Introduction (March 22, 2010).  Plaintiffs seek a declaration that they are allowed to grow, possess, use, and distribute cannabis free from federal penalties, including criminal prosecutions and civil sanctions and forfeitures.

Plaintiffs allege that Oklevueha has 250 members in Hawaii and is one of 100 branches of the Native American Church. See id. ¶¶ 19, 41.  Plaintiffs further allege that the Native American Church has an estimated 500,000 members in more than 24 states.  Id. ¶ 19.  The First Amended Complaint alleges that each branch of the Church is independent and is "responsible for its own Church management, ceremonies, and Medicine People."  Id. ¶ 22.

Plaintiffs allege that all 250 members of Oklevueha use cannabis in religious ceremonies, and that use of cannabis is "an

3

essential and necessary component of [their] religion." Id.
¶¶ 41, 48.  Plaintiffs allege that "certain North American Indian
Tribes" have used cannabis for religious and therapeutic
purposes.  Id. ¶ 23.  Plaintiffs allege that Mooney "is of
Seminole Native American ancestry." Id. ¶ 10.  Plaintiffs do
not, however, allege that Seminoles traditionally use cannabis in
religious ceremonies or that any of the 250 members of Oklevueha
follows the traditional Seminole religion.

Mooney says that he uses the cannabis sacrament daily.
He alleges that he also uses cannabis along with other members of
Oklevueha in twice-monthly "sweats" during the new moon and full
moon.  See id. ¶ 37.  There are no allegations describing what a
"sweat" is, how many people participate in the "sweats," the
manner in which cannabis is used during the "sweats," or how much
cannabis is used.  The First Amended Complaint does allege,
however, that the "sweats" are held at various "private locations
on Oahu" and that Plaintiffs "acquire their cannabis by
cultivating it or acquiring it from other churches, caregivers or
other state-sanctioned methods." Id. ¶¶ 37, 40.

Plaintiffs claim to fear criminal prosecution for
cultivating, consuming, possessing, and distributing cannabis.
Id. ¶¶ 52-53.

Plaintiffs allege that approximately one pound of
cannabis, valued at approximately $7,000, was seized at an

4

unidentified time by United States drug enforcement authorities in Hawaii before FedEx could deliver the cannabis to Mooney.  <u>Id.</u> ¶ 49.  There is no allegation that Plaintiffs have been prosecuted or threatened with prosecution in connection with that seizure.  Although the First Amended Complaint does not allege when this seizure occurred, Mooney previously submitted an affidavit indicating that the seizure occurred approximately one year ago, in June 2009.  This court notes the time-frame in Mooney's affidavit for background purposes only and does not rely on it in ruling on the current motion.

Plaintiffs allege that, in March 2010, the U.S. Drug Enforcement Administration raided THC Ministry, also known as The Hawaii Cannabis Ministry, an alleged Big Island of Hawaii church that also uses cannabis in religious events.  <u>See</u> <u>id.</u> ¶ 51. However, the First Amended Complaint does not allege any connection between the THC Ministry and Oklevueha or indicate that they are similarly situated.

III.    <u>STANDARD.</u>

The applicable legal standard was set forth in this court's previous order dismissing the original Complaint.  <u>See</u> <u>Oklevueha Native Am. Church of Haw., Inc., v. Holder</u>, No. 09-00336, 2010 WL 649753, at *2 (D. Haw. Feb. 23, 2010).  That standard is incorporated herein by reference.

IV.        THE PREENFORCEMENT CLAIMS ARE DISMISSED.

          In its previous order, the court ruled that Plaintiffs'
preenforcement challenge to the federal drug laws under the
Religious Freedom Restoration Act of 1993 was not ripe.  The
court ruled that the Complaint failed to allege facts
demonstrating a genuine threat of imminent prosecution.  See
Oklevueha, 2010 WL 649753, at *4-*5 (citing Thomas v. Anchorage
Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000)).  The
court noted that, when a litigant brings a preenforcement
challenge to a statute, "neither the mere existence of a
proscriptive statute nor a generalized threat of prosecution"
will satisfy the ripeness requirement.  Oklevueha, 2010 WL
649753, at *5 (citing Thomas, 220 F.3d at 1139).  The court
further ruled that determining the presence of a genuine threat
of prosecution involves a review of three factors: whether
Plaintiffs have articulated a concrete plan to violate the law,
whether prosecuting authorities have communicated a specific
warning or threat to initiate proceedings, and the history of
past prosecution or enforcement of the statute.  Oklevueha, 2010
WL 649753, at *5 (citing Thomas, 220 F.3d at 1139).

          In dismissing the preenforcement claims asserted in the
Complaint, the court reasoned that the Complaint did not allege a
concrete plan to violate the law, as it did not allege when,
where, and under what circumstances Plaintiffs intended to use

cannabis.  See Oklevueha, 2010 WL 649753, at *5.  With respect to the second factor, the court ruled that the Complaint was devoid of any threat of prosecution.  Id.  Although cannabis had been seized in June 2009, the court noted that neither Mooney nor anyone else associated with Oklevueha had ever been threatened with prosecution in connection with that seizure.  Id.  Finally, with respect to the third factor, the court determined that the Complaint was devoid of allegations concerning the enforcement of the federal drug laws.  Although the court noted that the Government does enforce the statute, it stated that it was in no position to guess how frequently and under what circumstances cannabis seizures lead to criminal charges.  Id.

The court also dismissed the original Complaint because it failed to satisfy the prudential component of ripeness.  That is, the Complaint essentially asked the court to decide constitutional questions in a vacuum and sought an order enjoining the Government from enforcing drug laws without any delineation of what the Government may and may not regulate.  The court noted that it could not tell whether Plaintiffs were essentially seeking immunity for cannabis importation and distribution of thousand of pounds per month or whether they were asking to be allowed to pass a single cannabis cigarette among Oklevueha members.  Id. at *8.

The First Amended Complaint has added little detail
going to the ripeness of the preenforcement claims.  For the
reasons set forth in this court's previous order, the First
Amended Complaint also fails to allege a ripe claim.

1.   Constitutional Component.

The court reiterates here that "neither the mere
existence of a proscriptive statute nor a generalized threat of
prosecution" will satisfy the ripeness requirement.  Thomas, 220
F.3d at 1139.  "Rather, there must be a genuine threat of
imminent prosecution."  Id. (citation and quotations omitted).
As discussed above, whether there is a genuine threat of
prosecution involves a review of three factors: "whether the
plaintiffs have articulated a 'concrete plan' to violate the law
in question, whether the prosecuting authorities have
communicated a specific warning or threat to initiate
proceedings, and the history of past prosecution or enforcement
under the challenged statute."  Id.

The Ninth Circuit has stated that a "general intent to
violate a statute at some unknown date in the future does not
rise to the level of an articulated, concrete plan."  Thomas, 220
F.3d at 1139.  Although the First Amended Complaint adds facts
alleging that Plaintiffs consume cannabis during "sweats" twice a
month, and as part of their "daily worship," it does not allege
exactly how, where, in what quantities, and under what

circumstances Plaintiffs intend to consume cannabis.  Plaintiffs also allege that they supply cannabis by cultivating or "acquiring it from other churches, caregivers or other state-sanctioned methods."  These general facts, while helpful, fail to state a concrete plan.  They do not, for example, include how much cannabis Plaintiffs intend to cultivate or acquire, how they intend to acquire cannabis from other churches, caregivers, or other state-sanctioned methods, whether they will collect "state-sanctioned" cannabis from various sources so that they end up holding a larger amount than would be "state-sanctioned," whether they will use "state-sanctioned" cannabis for medical or other "state-sponsored" purposes only, where they store the cannabis when not using it, and how, how often, in what amounts, and to whom they plan to distribute cannabis.  In other words, Plaintiffs' general allegations concerning cannabis use, possession, and distribution, including sweeping references to the use of cannabis in daily worship and during twice-monthly "sweats," do not describe a concrete plan to violate a federal drug law that makes the matter ripe for adjudication.

This court still cannot tell, for example, whether Plaintiffs merely grow a couple of cannabis plants on church property, or whether Mooney himself then uses the cannabis from those plants while performing his "daily worship."  In such circumstances, it might be unlikely that Plaintiffs' activities

would come to the attention of federal drug authorities, especially because Plaintiffs allege that the "sweats" occur on private property.  Conversely, if Plaintiffs are importing pounds of cannabis every month for use by church members during religious ceremonies and/or for sale over the internet, the likelihood of prosecution for a federal drug crime increases.

Given the lack of factual allegations in the First Amended Complaint concerning how cannabis is obtained or used in connection with Plaintiffs' religion, this court determines that Plaintiffs fail to sufficiently allege a "concrete plan."  As noted in the earlier order dismissing the preenforcement challenge, this court is not ruling that Plaintiffs will be unable to sufficiently allege a "concrete plan," only that the First Amended Complaint fails to do so.

With respect to the second factor--a specific threat of enforcement directed to Plaintiffs--the record is still devoid of any such threat.  The Ninth Circuit has stated that the threat must be "credible, not simply imaginary or speculative."  Thomas, 220 F.3d at 1140 (citation and quotations omitted).  "When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court."  Id.

Although Plaintiffs allegedly fear prosecution, they do not identify a single instance in which an Oklevueha member has been prosecuted or threatened with prosecution for a cannabis-related violation.  The Ninth Circuit has held, "A specific warning of an intent to prosecute under a criminal statute may suffice to show imminent injury and confer standing."  See, e.g., San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1127 (9th Cir. 1996)(citing Steffel v. Thompson, 415 U.S. 452, 459 (1974)).  The court further specified: "On the other hand, a general threat of prosecution is not enough to confer standing." Id. at 1127 (citing Poe v. Ullman, 367 U.S. 497, 501 (1961)).  At most, Plaintiffs allege that a package containing cannabis was seized while on its way to Mooney.  Plaintiffs do not allege that they have been threatened with prosecution arising out of that seizure.

Plaintiffs' ripeness argument relies on Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210, 1214 (D. Or. 2009).  However, the plaintiffs in that case alleged that their spiritual leader had been arrested in connection with a seizure by federal authorities of Daime tea nearly ten years before the complaint had been filed, which would have demonstrated a history of past enforcement.  By contrast, Plaintiffs do not allege that Mooney or anyone else associated with Oklevueha has ever been warned by federal authorities,

threatened with prosecution, or arrested in connection with the prior seizure.  Furthermore, the First Amended Complaint does not clearly allege that Plaintiffs intend to continue bringing in cannabis in a way likely to be noted by federal drug authorities.

Plaintiffs rely on a case in which the court held a reasonable threat of prosecution existed for purposes of standing even in the absence of active prosecution against the plaintiffs. See Adult Video Ass'n v. Barr 960 F.2d 781, 785-86 (9th Cir. 1991), vacated sub nom. Reno v. Adult Video Ass'n, 509 U.S. 917 (1993), reinstated in part, 41 F.3d 503 (9th Cir. 1994). However, Adult Video held that the "government's active enforcement . . . against other videotape distributors demonstrates that the threat of prosecution is real."  960 F.2d at 785.  Unlike the plaintiffs in Adult Video, neither Oklevueha nor Mooney alleges the "government's active enforcement" against similarly situated parties.  At most, Plaintiffs have added allegations concerning a U.S. Drug Enforcement Agency raid on THC Ministry, an alleged church on the Big Island of Hawaii whose members supposedly consume cannabis for religious use.  However, Plaintiffs fail to allege any substantive connection between the two churches or allege how the two churches are similarly situated.  Furthermore, Plaintiffs do not allege the particular circumstances of the raid or explain why the raid demonstrates an imminent threat of prosecution of Plaintiffs.  If, for example,

THC Ministry was offering cannabis over the internet and/or at a store to the general public, the alleged religious reason for using cannabis might have been suspect.

This court, of course, recognizes that a person "does not have to await the consummation of a threatened injury to obtain preventive relief," particularly in a First Amendment challenge that seeks to avoid the chilling effects of sweeping restrictions.  See Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003).  Plaintiffs cite Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979), in arguing that Plaintiffs are not required to await arrest or expose themselves to prosecution before challenging the constitutionality of a statute.  However, this court has previously held that it "does not read Babbitt or any governing law as holding that a remote possibility is sufficient to establish standing."  Democratic National Committee v. Watada, 199 F. Supp. 2d 1018, 1030 (D. Haw. 2002).  A plaintiffs needs more than mere concern or speculation to establish an imminent threat of prosecution.

With respect to the third factor, the history of enforcement under the statute, the First Amended Complaint is devoid of allegations as to the enforcement of the statute. While this court's own experience is that the Government does prosecute violations of the Controlled Substances Act, this court

13

is still in no position to guess how frequently cannabis is seized, or how often and under what circumstances cannabis seizures lead to criminal charges, especially when the entity using cannabis identifies itself as a church that uses cannabis for religious purposes.

Plaintiffs' citation to O Centro Espirita remains unavailing.  In O Centro Espirita, the Government conceded that a religious sect was sincerely exercising its religion by receiving communion through drinking *hoasca*, a hallucinogen regulated under the Controlled Substances Act.  546 U.S. at 423.  On review, the Supreme Court determined that the Government had failed to demonstrate (at the preliminary injunction stage) that a compelling interest barred the sacramental use of *hoasca*.  Id. at 439.

Plaintiffs' reliance on O Centro Espirita is insufficient to establish that their case is ripe.  O Centro Espirita certainly establishes that, under some circumstances, preindictment challenges to the Controlled Substances Act as violative of RFRA are ripe for review.  542 U.S. at 424.  However, in this case, Plaintiffs assert conclusions without supporting factual allegations.  There is no established history of importation of cannabis analogous to the history in O Centro Espirita.  On the contrary, the First Amended Complaint only alleges that one package containing approximately one pound of

14

cannabis worth approximately $7,000 was seized.  There is no allegation that, at the time of the seizure, the Government knew the cannabis was intended for alleged religious use.  Nor are there clear allegations that Plaintiffs intend to ship cannabis to themselves in a similar manner in the future.

B.   Prudential Component.

Even if Plaintiffs met the constitutional requirement for ripe claims, this court would dismiss the preenforcement claims in the First Amended Complaint based on the prudential component of the ripeness doctrine.  As the en banc Ninth Circuit court noted in Thomas, the prudential "analysis is guided by two overarching considerations: the fitness of the issues for judicial consideration and the hardship to the parties of withholding consideration."  Thomas, 220 F.3d at 1141.

As described in the previous order, this case is not fit for judicial consideration, as the preenforcement allegations of the First Amended Complaint are still "remarkably thin and sketchy."  Id. at 1141.  The previous order referred to Thomas to establish that a "concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate."  Id.  In Thomas, the Ninth Circuit examined a preenforcement challenge to Alaska housing laws prohibiting discrimination on the basis of marital status.  The Ninth Circuit ruled that the landlords' claim was not ripe, as the landlords

15

were not faced with a realistic danger of sustaining a direct injury as a result of the nondiscrimination statutes.  Id. at 1141.  According to the Ninth Circuit, even assuming the landlords had presented a ripe case or controversy in the constitutional sense, jurisdiction was lacking given prudential concerns: "The manner in which the intersection of marital status discrimination and the First Amendment is presented here, devoid of any specific factual context, renders this case unfit for judicial resolution."  Id.

Similarly, Plaintiffs' First Amended Complaint contains no factual allegations describing the procedures used to consume cannabis during religious "sweats."  The court is uninformed as to how much cannabis is consumed over how long a period and by what number of individuals during the "sweats."  In fact, the First Amended Complaint contains almost no information about the "sweats" at all.

The First Amended Complaint also fails to allege how the cannabis is consumed in conjunction with "daily worship," exactly how Plaintiffs acquire their cannabis, and how and when they intend to do so in the future.  Without the necessary facts, this court cannot determine from the four corners of the First Amended Complaint whether the controversy is ripe.

Plaintiffs essentially seek a broad declaration that they can grow, use, possess, and distribute cannabis in any way

16

they choose free of criminal or civil repercussions under the Controlled Substances Act.

For all the court knows, they may be planning to import thousands of pounds of cannabis every month and to sell in unlimited amounts the cannabis in a store and via a website to anyone who, without more, simply claims a religious need.

The lack of fitness for judicial review goes hand-in-hand with Defendants' argument that Oklevueha lacks standing to assert freedom of religion-based claims because such claims necessarily involve the participation of the members of Oklevueha.  See Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 343 (1975) ("an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").  To the extent Oklevueha is seeking an injunction, it needs to frame the scope of the injunction through allegations concerning its members use, possession, cultivation, and distribution of cannabis.  A general averment that Oklevueha's members use, possess, cultivate, and distribute cannabis is insufficient to establish standing regarding each individual member's free exercise of religion.

As noted in the earlier order, even in <u>O Centro</u> <u>Espirita</u>, 546 U.S. at 427, the Supreme Court did not grant a blank check to the plaintiffs who challenged the application of the Controlled Substances Act.  The Court held that the Government had failed to demonstrate, at the preliminary injunction stage, a compelling interest barring the religious sect's sacramental use of *hoasca*.  However, the Court required the church to import any *hoasca* pursuant to federal permits, to restrict control over the *hoasca* to church authorities, and to warn members of the dangers of *hoasca*.

The court notes that any hardship to the parties if this court dismisses the preenforcement claims is minimal. Because there is no identified immediate threat of prosecution, the dismissal does not appear to prejudice Plaintiffs.  More importantly, the dismissal is without prejudice.  Plaintiffs may file a timely appropriate motion with the Magistrate Judge assigned to this case seeking leave to file a Second Amended Complaint.  If a new pleading is permitted, Plaintiffs should attempt to cure the defects of the First Amended Complaint, setting forth facts--as opposed to conclusions--that establish ripe claims, as well as an entitlement to relief.  <u>See Ashcroft</u> <u>v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>Bell Atl. Corp. v.</u> <u>Twombly</u>, 550 U.S. 544, 555 (2007).  Any proposed Second Amended Complaint should allege more than general facts and intentions.

18

It should allege enough detail to tell this court and Defendants the factual bases of the claims and the scope of any requested injunctive relief.  Such a pleading should address the constitutional and prudential ripeness concerns described above. In other words, Plaintiffs should more particularly describe their history and intentions concerning cannabis use, possession, cultivation, importation, and distribution.  If permitted to file an amended pleading, Plaintiffs should also allege facts--not conclusions--that demonstrate a credible threat of enforcement of drug laws with respect to their alleged religious use of cannabis.[1]

Given the dismissal of the preenforcement claims, this court need not address the Government's other arguments concerning these claims.

V.      ANALYSIS REGARDING SEIZURE.

As Defendants argued and Plaintiffs conceded, Plaintiffs' tort claims of theft and conversion, which seek the return of or compensation for the seized cannabis, are flawed and also barred by the Government's sovereign immunity and by the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2.

The United States, as a sovereign, is immune from suit unless it has waived its immunity.  See Dep't of Army v. Blue

---

[1]This court expresses no opinion as to whether the Magistrate Judge should or should not grant leave to file a Second Amended Complaint.

Fox, Inc., 525 U.S. 255, 260 (1999) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." (quotation marks and citation omitted)).  Congress has waived its immunity with respect to a wide range of suits, including torts under the Federal Torts Claims Act, 28 U.S.C. § 2671-80.  However, except with respect to claims "based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer," Congress excluded from the Federal Tort Claims Act waiver "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."  28 U.S.C. § 2680(c).  Plaintiffs have not cited any authority indicating that the Government has waived its sovereign immunity with respect to the tort claims asserted here.

The Supremacy Clause prevents state laws from imposing tort liability on the United States for acts by federal officers that are entirely authorized by federal law.  See Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000)(citing Hines v. Davidowitz, 312 U.S. 52, 66-67 (1941)) (explaining that federal law preempts state law "to the extent of any conflict with a federal statute" and when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress"). The First Amended Complaint does not allege that the Government, when it seized the cannabis last year, knew or should have known that it was being sent to Mooney for religious purposes. To the contrary, it appears that the Government seized cannabis discovered in a FedEx package because cannabis is a controlled substance.

Plaintiffs' tort claims for theft and conversion are therefore dismissed.

Plaintiffs also assert claims for the return of their cannabis or compensation for the seizure as a damage authorized by the Religious Freedom Restoration Act of 1993 ("RFRA"). The court leaves this claim for further proceedings in which the remedies under RFRA related to a seizure are fully addressed. The court notes that 42 U.S.C. § 2000bb-1(c) authorizes this court to award "appropriate relief" for a violation of RFRA. It is not clear from what the parties have submitted whether the return of or compensation for seized products is "appropriate relief" under RFRA. In <u>O Centro Espirita</u>, for example, the remedies included a preliminary injunction. <u>See</u> 546 U.S. at 439. In a concurrence, Circuit Judge David S. Tatel of the District of Columbia Circuit said that RFRA violations are "often ongoing, making injunctive relief 'appropriate' . . . . Because Congress enacted RFRA to return to . . . a world in which damages were unavailable against the government, 'appropriate relief' is most

naturally read to exclude damages against the government."

Webman v. Fed. Bureau of Prison 441 F.3d 1022, 1026-28 (D.C. Cir. 2006).  Other courts have awarded attorney's fees for plaintiffs who successfully claim violations under RFRA.  See Helbrans v. Coombe, 890 F. Supp. 227 (S.D.N.Y. 1995)(awarding attorney's fees under the Civil Rights Attorney's Fees Award Act, in an action under RFRA to enjoin the state from removing plaintiff's facial hair upon entering state prison).

While Defendants argue that Oklevueha lacks associational standing to assert the rights of its members, this argument does not defeat the claim for the return of or compensation for the seized cannabis.  Oklevueha is seeking the return of or compensation for its own seized property and has standing to assert such a claim.  While it may be that this claim will ultimately fail, the present motion does not establish an entitlement to dismissal.

If Plaintiffs seek leave to file a Second Amended Complaint, they may consider including facts that further elucidate this claim, such as the exact date of the seizure, who seized the cannabis, how it was seized, how much cannabis was seized, and the intended use of the seized cannabis.

VI.      CONCLUSION.

For the foregoing reasons, the court dismisses the preenforcement and tort claims asserted in the First Amended

Complaint.  The court, however, does not dismiss the claim for the return of or compensation for the cannabis allegedly seized last year.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 22, 2010.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
Chief United States District Judge

Oklevueha Native Am. Chuch v. Holder; Civil No. 09-00336 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT