IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC.; MICHAEL REX "RAGING BEAR" MOONEY | ) ) ) ) | CIVIL NO. 09-00336 SOM/BMK |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiffs, | ) | DENYING IN PART MOTION TO |
| | ) | DISMISS FIRST AMENDED |
| | ) | COMPLAINT |
| vs. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., U.S. | ) | |
| Attorney General; MICHELE | ) | |
| LEONHART, Acting | ) | |
| Administrator, U.S. Drug | ) | |
| Enforcement Administration; | ) | |
| FLORENCE T. NAKAKUNI, U.S. | ) | |
| Attorney for the District of | ) | |
| Hawaii, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**I.      INTRODUCTION.**

Plaintiffs Michael Rex "Raging Bear" Mooney and the

Oklevueha Native American Church of Hawaii, Inc., allege that

marijuana (or, as they say, "cannabis") is a central part of

their religion.  Plaintiffs assert that their right to religious

freedom is being infringed on by enforcement of federal drug

laws, specifically 21 U.S.C. § 841.  Defendants, all Government

officials, move to dismiss all claims.  This court grants that

motion only in part.

II.        **FACTUAL BACKGROUND.**

On March 22, 2010, Plaintiffs filed a First Amended Complaint that asserted a right to cultivate, use, possess, and distribute cannabis free of federal drug laws.  The First Amended Complaint also sought the return of or compensation for cannabis that the Government had seized from material shipped to Plaintiffs.  See ECF No. 26.

On June 22, 2010, the court dismissed Plaintiffs' "preenforcement claims," i.e., claims that their rights were being violated even though no drug charges against Plaintiffs had issued.  The court ruled that those claims were not ripe and dismissed the tort claims against Defendants for theft and conversion of Plaintiffs' cannabis, citing the Supremacy Clause. See ECF No. 34; 719 F. Supp. 2d 1217 (D. Haw. 2010).  On October 26, 2010, the court dismissed the remaining claim for the return of or compensation for the seized cannabis.  See ECF No. 48; 2010 WL 4386737 (D. Haw. Oct. 26, 2010).

On April 9, 2012, the Ninth Circuit Court of Appeals held that Plaintiffs' preenforcement claims were ripe because the Government had previously seized cannabis sent to Plaintiffs. The Ninth Circuit remanded those claims.  However, the Ninth Circuit affirmed this court's decisions concerning the tort claims and the claim for the return of or compensation for the seized cannabis.  See ECF No. 58; 676 F.3d 829 (9th Cir. 2012).

Given the Ninth Circuit's rulings, the remaining claims are the preenforcement claims asserted in Count 1 (Religious Freedom Restoration Act claim), Count 2 (American Indian Religious Freedom Act claim), Count 3 (Equal Protection Clause claim), Count 4 (First Amendment free exercise of religion claim), Count 6 (Declaratory Judgment Act claim), and Count 7 (injunctive relief claim).

On July 13, 2012, Defendants moved to dismiss all remaining claims. See ECF No. 63. That motion is granted in part and denied in part. To the extent Plaintiffs assert violations of the Religious Freedom Restoration Act with respect to their claimed use of cannabis in the exercise of their religion, the motion is denied. With respect to all other claims, including any claims under the Religious Freedom Restoration Act that relate to matters other than Plaintiffs' exercise of their religion, the First Amended Complaint is dismissed.

**III.    BACKGROUND.**

Mooney says he is a "Spiritual Leader" and medicine man, and the founder of Oklevueha, a church that he says was established "to espouse the virtues of, and to consume entheogens," psychoactive substances used in religious, shamanic, or spiritual contexts. See First Amended Complaint, Introduction and ¶ 2 (March 22, 2010). Plaintiffs seek a determination that

they are entitled to grow, possess, use, and distribute cannabis free from federal penalties, including criminal prosecutions and civil sanctions and forfeitures.

Plaintiffs allege that Oklevueha has 250 members in Hawaii and is one of 100 branches of the Native American Church. See id. ¶¶ 19, 41.  Plaintiffs further allege that the Native American Church has an estimated 500,000 members in more than 24 states.  Id. ¶ 19.  The First Amended Complaint alleges that each branch of the Church is independent and is "responsible for its own Church management, ceremonies, and Medicine People."  Id. ¶ 22.

Plaintiffs allege that all 250 members of Oklevueha use cannabis in religious ceremonies, and that use of cannabis is "an essential and necessary component of [their] religion."  Id. ¶¶ 41, 48.  Plaintiffs also allege that Mooney "is of Seminole Native American ancestry," and that "certain North American Indian Tribes" have used cannabis for religious and therapeutic purposes.  Id. ¶¶ 10, 23.  Plaintiffs do not, however, allege that Seminoles traditionally use cannabis in religious ceremonies or that any of the 250 members of Oklevueha follows the traditional Seminole religion.

Plaintiffs say that peyote is a significant sacrament for them, noting that Native Americans traditionally consume cannabis, especially when their primary sacrament, peyote, is in

4

short supply.  Id. ¶¶ 23-25.  According to Plaintiffs, members of Oklevueha consume numerous other substances, such as "Ayahuasca . . . , Iboga, Kava, Psilocybin, San Pedro, Soma, Teonanacatyl, Tsi-Ahga, and many others."  Id. ¶ 25.

Plaintiffs describe cannabis as being used in religious ceremonies to enhance spiritual awareness and to "direct experience of the divine."  Id. ¶ 26.  Mooney says that he uses the cannabis sacrament daily and that he and other members of Oklevueha use cannabis in twice-monthly "sweats" held during the new moon and full moon.  See id. ¶ 37.  The only further detail concerning the "sweats" is that they are held at various "private locations on Oahu."  Plaintiffs say they "acquire their cannabis by cultivating it or acquiring it from other churches, caregivers or other state-sanctioned methods."  Id. ¶¶ 37, 40.

Mooney says that he "possesses a State of Hawaii Department of Public Safety Narcotics Enforcement Division Medical Marijuana Registry Patient Identification Certificate" that "allows him to acquire, possess, cultivate and consume cannabis without State criminal penalty in the State of Hawaii." Id. ¶ 39.  It appears from these allegations that Mooney obtained a certificate under Hawaii's Medical Use of Marijuana laws, which permit use of cannabis by a person certified as having a "debilitating medical condition" or by a person acting as the "primary caregiver" for such a person.  While Mooney separately

alleges that he is a medicine man, his pleadings contain no factual allegations linking such a status to anything required by Hawaii law.

Plaintiffs say they fear that their cultivation, consumption, possession, and distribution of cannabis will lead to their being prosecuted.  Id. ¶¶ 52-53.

Plaintiffs also allege that Mooney should have received approximately one pound of cannabis, valued at approximately $7,000, that was seized at an unidentified time by federal drug enforcement authorities in Hawaii before Federal Express could deliver it to Mooney.  Id. ¶ 49.

IV.      STANDARD.

The applicable legal standard was set forth in this court's previous order dismissing the original Complaint.  See ECF No. 25; 2010 WL 649753, at *2 (D. Haw. Feb. 23, 2010).  That standard is incorporated herein by reference.

V.       THE PREENFORCEMENT CLAIMS.

A.   Count 1--Religious Freedom Restoration Act.

In 1990, the Supreme Court held that the Free Exercise Clause of the First Amendment does not prohibit the Government from burdening religious practices through generally applicable laws.  See Employment Div., Dept. of Human Res. of Or. v. Smith, 494 U.S. 872 (1990).  Congress responded by enacting the Religious Freedom Restoration Act of 1993 ("RFRA"), which

"prohibits the Federal Government from substantially burdening a person's exercise of religion, unless the Government 'demonstrates that application of the burden to the person' represents the least restrictive means of advancing a compelling interest." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 423-24 (2006) (quoting 42 U.S.C. § 2000bb-1(b)).  Under RFRA unless the Government satisfies a "compelling interest test," "the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability.'" Id. (quoting 42 U.S.C. § 2000bb-1(a)).  That is, the Government must "'demonstrat[e] that application of the burden to the person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" Id. (quoting 42 U.S.C. § 2000bb-1(b)).

The Ninth Circuit has held that, "[t]o establish a prima facie RFRA claim, a plaintiff must present evidence sufficient to allow a trier of fact rationally to find" that the activities the plaintiff claims are burdened by Government action are an "exercise of religion" and that the Government action "substantially burdens" the plaintiff's exercise of religion. Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1068

(9th Cir. 2008) (en banc).   The en banc court described a

"substantial burden" as follows:

> Under RFRA, a "substantial burden" is imposed
> only when individuals are forced to choose
> between following the tenets of their
> religion and receiving a governmental benefit
> . . . or coerced to act contrary to their
> religious beliefs by the threat of civil or
> criminal sanctions . . . .   Any burden
> imposed on the exercise of religion short of
> that . . . is not a "substantial burden"
> within the meaning of RFRA, and does not
> require the application of the compelling
> interest test . . . .

Id. at 1069-70.

The Controlled Substances Act, 21 U.S.C. §§ 801-971,

classifies marijuana ("cannabis," to Plaintiffs) as a controlled

substance and makes it unlawful to manufacture, distribute,

dispense, or possess that substance except as otherwise provided

in the statute.   See Raich v. Gonzales, 500 F.3d 850, 854-55 (9th

Cir. 2007).   Plaintiffs appear to be seeking a declaration that,

under RFRA, their use of cannabis cannot be restrained by the

Controlled Substances Act or other federal laws.

Defendants seek dismissal of the preenforcement claim

under RFRA, arguing that Plaintiffs seek an injunction with

respect to usage not associated with their religion and that the

First Amended Complaint fails to allege any "substantial burden."

The court agrees that, to the extent the First Amended Complaint

seeks relief under RFRA for matters unrelated to the exercise of

Plaintiffs' religion, that claim is not viable.   See Stomans,

8

Inc. v. Selecky, 586 F.3d 1109, 1140 (9th Cir. 2009) (stating
that a court abuses its discretion when it issues an overbroad
injunction and that "[i]njunctive relief must be tailored to
remedy the specific harm alleged" (quotation, alteration, and
citation omitted)).  However, Plaintiffs also seek relief under
RFRA with respect to alleged religious use, and Defendants'
motion is denied as to that portion of the RFRA claim.

Turning first to the portion of the RFRA claim that is
not tied to alleged religious use of cannabis, this court notes
that the prayer for relief seeks an injunction prohibiting
Defendants not only from arresting or prosecuting Plaintiffs in
connection with their religious use of cannabis, but also in
connection with Plaintiffs' "possession of therapeutic cannabis
for individual use in compliance with State of Hawaii Revised
Statutes," Plaintiffs' "ability to obtain cannabis from any other
legal source in compliance with State of Hawaii Revised
Statutes," Plaintiffs' "ability . . . to cultivate and distribute
cannabis to any person or entity in compliance with State of
Hawaii Revised Statutes," and Plaintiffs' "cultivation of
cannabis for therapeutic . . . needs."  This prayer for relief
does, as Defendants contend, appear to encompass nonreligious
matters.

For example, Plaintiffs' reference to "State of Hawaii
Revised Statutes" appears to relate to sections 329-121 to 329-

9

128, which pertain to the medical use of cannabis.  This is in keeping with Mooney's assertion that he "possesses a State of Hawaii Department of Public Safety Narcotics Enforcement Division Medical Marijuana Registry Patient Identification Certificate" that "allows him to acquire, possess, cultivate and consume cannabis without State criminal penalty in the State of Hawaii." See Complaint ¶ 39.

While Mooney alleges that he is a spiritual leader, which he says is commonly referred to as a medicine man, see id. ¶ 2, no factual allegations in the First Amended Complaint even hint that any medical use of cannabis falling under state law relates to the exercise of Mooney's religion.  Nor is there any factual allegation about any Oklevueha's member's medical use of cannabis at all, whether in connection with religion or not. Hawaii law on the medical use of cannabis does not relate to or rely on any religion.  Thus, without more, the court sees no reason to tie medical use to religion.  Just as a doctor who used cannabis himself or herself would not automatically have a RFRA claim, a medicine man needs to explain how any medical use of cannabis pursuant to state law relates to RFRA.  No factual allegations provide that explanation.  Therefore, to the extent any part of the RFRA claim seeks an injunction in reliance on sections 329-121 to 329-128 of Hawaii Revised Statutes or any

other provision unrelated to religion, that part of the RFRA claim is dismissed as not stating a claim.

To the extent the First Amended Complaint seeks an injunction under RFRA concerning Plaintiffs' alleged religious use of cannabis, Plaintiffs allege a substantial burden on their religion sufficient to survive the present motion to dismiss. Mooney alleges that he "uses cannabis sacrament daily," that Oklevueha members use cannabis in twice-monthly "sweats," that Oklevueha's 250 members in Hawaii "consume cannabis in their religious ceremonies," and that "receiving communion through cannabis" is "an essential and necessary component of the Plaintiffs' religion." See First Amended Complaint ¶¶ 37, 38, 41, and 48. Plaintiffs allege that they "consume, possess, cultivate, and/or distribute cannabis as sanctioned and required by their legitimate religion and sincere religious beliefs, and as such, their free exercise of religion protected by RFRA." Id. ¶ 47. Plaintiffs also say they "fear for their ability to continue to cultivate, consume, possess and distribute cannabis sacrament without the exceedingly significant burden placed upon their lives by being branded criminals mandated for Federal imprisonment and whose real property and assets can be seized civilly with no applicable legal defense." Id. ¶ 52.

These allegations, coupled with Plaintiffs' contention that they are being "coerced to act contrary to their religious

beliefs by the threat of civil or criminal sanctions," sufficiently describe a "substantial burden" on what Plaintiffs say is their "exercise of religion."   See Navajo Nation, 535 F.3d at 1069-70.

Plaintiffs' alleged use of controlled substances other than cannabis in their religion may go to whether Plaintiffs are actually exercising a religion in using cannabis, or to the actual extent of any burden on that religion, not to whether Plaintiffs have adequately pled the existence of a substantial burden.  That is, those issues may be relevant to liability and damages, but not to whether the RFRA claim should be dismissed on the present motion.

Finally, Defendants urge this court to dismiss the RFRA claim on the ground that Plaintiffs have not sought the religious exemption Defendants say is available under the Controlled Substances Act.  The application or availability of an exemption may come before this court in the context of an affirmative defense, but it does not go to the issue of whether Plaintiffs' allegations concerning a substantial burden on the exercise of

any religion are adequate.[1]  All that is required at this stage

of this case is a sufficient factual allegation of such a burden.

**B.   Count 2--American Indian Religious Freedom Act.**

Count 2 asserts a violation of the American Indian

Religious Freedom Act, 42 U.S.C. § 1996 ("AIRFA").  That section

states:

> On and after August 11, 1978, it shall be the
> policy of the United States to protect and
> preserve for American Indians their inherent
> right of freedom to believe, express, and
> exercise the traditional religions of the
> American Indian, Eskimo, Aleut, and Native
> Hawaiians, including but not limited to
> access to sites, use and possession of sacred
> objects, and the freedom to worship through
> ceremonials and traditional rites.

As Plaintiffs conceded at the hearing, "AIRFA creates no

judicially enforceable individual rights."  United States v.

---

[1]Plaintiffs argued at the hearing on the present motion that
the Government would not grant such an exemption request.  See,
e.g., Olsen v. Drug Enforcement Admin., 878 F.2d 1458, 1460 (D.C.
Cir. 1989) ("On July 29, 1988, the DEA issued its Final Order,
reaffirming its denial of Olsen's exemption requests.  That
order, which we set out in full as an Appendix to this opinion,
first disclaimed statutory authority to grant the exemption.
According to the DEA, Congress intended no religious-use
exemption from Controlled Substances Act proscriptions other than
the peyote-use permission granted the Native American Church.
Next, the DEA assumed, in order to rule completely, that it had
authority to consider Olsen's exemption petition.  It further
accepted, for purposes of its decision, that the Ethiopian Zion
Coptic Church is a bona fide religion with marijuana as its
sacrament.  The agency then rejected Olsen's free exercise claim,
concluding that the government has a compelling interest in the
regulation of controlled substances and that accommodation to
religious use of drugs is not required.").  Whether the
Government might grant such a request is not properly before this
court on the present motion to dismiss.

<u>Mitchell</u>, 502 F.3d 931, 954 (9th Cir. 2007).  Instead, "AIRFA is simply a policy statement and does not create a cause of action." <u>Henderson v. Terhune</u>, 379 F.3d 709, 711 (9th Cir. 2004).

Accordingly, Count 2 is dismissed.

### C.   Count 3--Equal Protection.

The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 440 (1985) (quoting <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)).  In Count 3, Plaintiffs assert that Defendants are violating their equal protection rights by distinguishing between Plaintiffs' use of cannabis and other religious groups' use of different drugs. Plaintiffs call all such drugs, including cannabis, "entheogens." Defendants seek dismissal of Count 3, arguing that they have a rational basis for treating the groups differently.

Count 3 is pled in a manner that makes it unclear whether Plaintiffs are raising a facial challenge to the constitutionality of the Controlled Substances Act or an "as applied" challenge.  Count 3 notes that Defendants "are currently prohibited" from arresting members of certain religions in connection with their religious use of peyote and Ayahuasca. First Amended Complaint ¶¶ 61, 62.  Plaintiffs say that threats

14

to arrest Mooney and Oklevueha members for cannabis use constitute an equal protection violation in light of the permitted consumption of other controlled substances.  If Plaintiffs are challenging different treatment set forth by statute, they are clearly bringing a facial challenge, and this court looks at what Congress did.  Plaintiffs may instead be challenging prosecutorial decisions as discriminatory (i.e., Plaintiffs may be bringing an "as applied" challenge), and therefore suing officials involved with prosecutions.  However, to the extent any prosecutorial decision is based on statutory provisions, Plaintiffs' real challenge must be to those provisions.  Given the lack of factual assertions about any Defendant's personal decision to treat Oklevueha differently from other groups claiming to use controlled substances for religious purposes, this Court reads any "as applied" challenge to a prosecutorial decision as grounded in statutory distinctions.  In that context, whether a facial or an "as applied" challenge, Count 3 does not survive the present motion to dismiss.

        This court subjects a law challenged under the Equal Protection Clause to one of three levels of scrutiny depending on the classification involved.  Strict scrutiny applies to classifications based on race, alienage, or national origin. Such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." City of Cleburne, 473

U.S. at 440.  Intermediate scrutiny applies to classifications based on gender or illegitimacy.  "A gender classification fails unless it is substantially related to a sufficiently important governmental interest."  Id.  Classifications based on illegitimacy will similarly survive an equal protection challenge to "the extent they are substantially related to a legitimate state interest."  However, when no fundamental right or suspect classification is involved, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Id.; Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir. 1990) ("Unless a classification trammels fundamental personal rights or implicates a suspect classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest.").  Accord Heller v. Doe by Doe, 509 U.S. 312, 320 (1993) ("Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

Under the rational basis test, a "classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Heller, 509 U.S. at 320

(quotations and citation omitted).  In language applicable to facial challenges to statutes, the Court has held that the Government "has no obligation to produce evidence to sustain the rationality of a statutory classification.  A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Id. (quotations, citation, and alterations omitted).  "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality."  Id. (quotations, citation, and alterations omitted).  However, in attempting to satisfy the rational basis standard, the Government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." City of Cleburne, 473 U.S. at 446; Lockary, 917 F.2d at 1155 (noting that the rational relation test will not sustain malicious, irrational, or plainly arbitrary conduct).

Few cases discuss whether a rational basis test may be applied on a motion to dismiss.  In Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir. 1992), the court stated,

> A perplexing situation is presented when
> the rational basis standard meets the
> standard applied to a dismissal under Fed. R.
> Civ. P. 12(b)(6).  The rational basis
> standard requires the government to win if
> any set of facts reasonably may be conceived
> to justify its classification; the Rule
> 12(b)(6) standard requires the plaintiff to

17

prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L. Ed.2d 59 (1984).  The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard.  The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts" in light of the deferential rational basis standard.  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.  We have upheld dismissals under Rule 12(b)(6) of challenges to such classifications, see, e.g., Maquire, 957 F.2d at 378-79, and we do so here.

Other courts have similarly held that a rational basis review may be conducted at the pleading stage.  See, e.g., Hettinga v. United States, 677 F.3d 471, 479 (D.C. Cir. 2012) ("Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not any reasonable conceivable state of facts that could provide a rational basis for the classification." (quotations and citation omitted)).

The Ninth Circuit, in Fields v. Palmdale School District, 427 F.3d 1197, 1209 (9th Cir. 2005), approved a

district court's rational basis review on a motion to dismiss.
In that case, the court was reviewing a challenge to a school
district's survey asking students to respond to questions on
sexual topics.  Some parents claimed that the survey infringed on
their right to control their children's upbringing.  The Ninth
Circuit, finding no fundamental right to be in issue, applied the
rational basis test and affirmed the district court's dismissal
of the federal claims for failure to state a claim.  This court
concludes that it similarly may conduct a rational basis review
on the present motion to dismiss to see whether the allegations
in the First Amended Complaint are sufficient to overcome the
presumption that a Government classification is rational.[2]

In United States v. Fry, 787 F.2d 903, 905 (4th Cir.
1986), the Fourth Circuit expressly upheld the different
treatment of marijuana as compared to alcohol and tobacco:

> It is also contended that since alcohol
> and tobacco are legal substances, the
> prohibition of the production and
> distribution of marijuana is so arbitrary as
> to amount to a deprivation of equal
> protection.  Whatever the harmful effects of
> alcohol and tobacco, however, Congress is not

---

[2]In United States v. Carlson, 1992 WL 64772 (9th Cir. 1992),
an unpublished and uncitable decision, the Ninth Circuit rejected
the argument that the Controlled Substances Act when applied to
religious use of controlled substances requires strict scrutiny.
Instead, the court applied the rational basis test, determining
that no equal protection violation occurred because "Congress
could have rationally distinguished between peyote and marijuana
on the basis of overwhelming control problems with marijuana
distribution."

> required to attempt to eradicate all similar
> evils. . . .  It is for Congress to weigh the
> conflicting considerations and determine the
> necessity and appropriateness of prohibiting
> trafficking in a dangerous substance, and it
> may conclude that prohibition of the
> trafficking in one such substance is
> appropriate though trafficking in another is
> left untouched.

Similarly, a district court in Kansas rejected an equal protection challenge brought by members of the Rastafarian faith to a Kansas law allowing religious use by members of the Native American Church of peyote.  In a petition filed under 28 U.S.C. § 2254, the Rastafarians asserted that a prohibition on the use of marijuana in their religion violated the Equal Protection Clause.  The court, noting that the actual abuse and availability of marijuana was greater than with peyote, held that the state court "was not unreasonable" in determining that the Native American Church and the Rastafarian religions were not similarly situated.  See McBride v. Shawnee County, Kansas Court Servs., 71 F. Supp. 2d 1098, 1102-03 (D. Kan. 1999).

Plaintiffs' position may ultimately win the day.  That is, cannabis may one day cease to be a controlled substance.  But it is not the court's task in this case to evaluate arguments against its present status as a controlled substance.  This court looks instead to whether Defendants have a rational basis for treating cannabis differently from some other substances.  As noted by other courts in cases such as Fry and McBride, a

20

government may rationally treat a substance differently because it may be more readily available and more easily abused than other substances.  Congress could have rationally decided to treat cannabis differently than other "entheogens" for precisely that reason.  Different treatment in statutes and different treatment in terms of arrests or seizures based on such statutes therefore both pass muster under the Equal Protection Clause. Count 3 is dismissed.

> **D.   Count 4--First Amendment.**

In Count 4, Plaintiffs assert that Defendants are violating their First Amendment right to the free exercise of religion.

Defendants seek dismissal of Count 4, arguing that, because the Controlled Substances Act is a neutral law of general applicability, it does not violate the First Amendment even if it impairs religious practices.  This argument is based on the 1990 case of Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), which held that the Free Exercise Clause of the First Amendment does not prohibit the Government from burdening religious practices through generally applicable laws.  Smith noted that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that

the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." Id. at 879 (quotations omitted).

As discussed above, Congress responded to Smith by enacting RFRA, which "prohibits the Federal Government from substantially burdening a person's exercise of religion, unless the Government 'demonstrates that application of the burden to the person' represents the least restrictive means of advancing a compelling interest." O Centro, 546 U.S. at 423-24 (2006) (quoting 42 U.S.C. § 2000bb-1(b)).   The Supreme Court has stated that RFRA was "intended to restore the compelling interest test . . . in all cases where free exercise of religion is substantially burdened." Sossamon v. Texas, 131 S. Ct. 1651, 1656 (2011) (citations and quotation omitted).

This court dismisses the First Amendment claim as pled. If the First Amendment claim is informed by RFRA such that the compelling interest test applies to Plaintiffs' free exercise of religion claim under the First Amendment, that First Amendment claim is duplicative of the RFRA claim asserted in Count 1 and is therefore unnecessary.   On the other hand, if the First Amendment claim is examined on its own without the RFRA umbrella, the court applies the standard set forth in Smith.   Because the Controlled Substances Act is a valid and neutral law of general applicability, Plaintiffs may not ignore it based on the First

22

Amendment.  See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 282 F. Supp. 2d 1236, 1241-48 (D.N.M. 2002).

> **E.    Counts 6 and 7--Declaratory and Injunctive Relief.**

Count 6 seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201(a),[3] that Defendants' enforcement of the Controlled Substances Act is unlawful, and that any possible future enforcement will similarly be unlawful.  The Ninth Circuit has described a declaratory judgment as offering "a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so."  Seattle Audubon Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) (quotations omitted).

---

[3]Section 2201(a) states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Accordingly, this court has dismissed Declaratory Judgment Act claims involving past actions when those claims are duplicative of other causes of action.  See Teaupa v. U.S. Nat'l Bank N.A., 836 F. Supp. 2d 1083, 1092 (D. Haw. 2011).  Other courts have similarly held that "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."  Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).  As Plaintiffs conceded at the hearing, their declaratory relief claim is not cognizable as an independent cause of action, as it essentially duplicates Plaintiffs' other causes of action.

In relevant part, Count 7 seeks an injunction prohibiting Defendants from arresting or prosecuting Plaintiffs, or seizing their sacraments, medicine, and assets.  However, as Plaintiffs conceded at the hearing, a claim for "injunctive relief" standing alone is not a cause of action.  Instead, injunctive relief may be available as a remedy if Plaintiffs prevail on a substantive claim.  See Hoilien v. OneWest Bank, FSB, 2012 WL 1379318 (D. Haw. Apr. 20, 2012) ("the Court follows the well-settled rule that a claim for injunctive relief cannot stand as an independent cause of action");  See Teaupa, 836 F. Supp. 2d at 1091 (same);  Pugal v. ASC (America's Servicing Co.), 2011 WL 4435089 (D. Haw. Sept. 21, 2011) (same).  Accordingly, Count 7 is dismissed, although this dismissal in no way precludes

24

an injunction if Plaintiffs establish their entitlement to that form of relief with respect to a substantive count.

**VI.**      **CONCLUSION.**

The court grants in part and denies in part the motion to dismiss.  To the extent Count I asserts violations of RFRA with respect to Plaintiffs' claimed use of cannabis in the exercise of their religion, the motion is denied.  In all other respects, the motion is granted, and all other claims in the First Amended Complaint are dismissed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 31, 2012.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Oklevueha Native Am. Chuch v. Holder; Civil No. 09-00336 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT