IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| OKLEVUEHA NATIVE AMERICAN CHURCH OF HAWAII, INC.; MICHAEL REX "RAGING BEAR" MOONEY | ) ) ) ) ) | CIVIL NO. 09-00336 SOM/BMK ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| ERIC H. HOLDER, JR., U.S. Attorney General; MICHELE LEONHART, Acting Administrator, U.S. Drug Enforcement Administration; FLORENCE T. NAKAKUNI, U.S. Attorney for the District of Hawaii, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## I.        INTRODUCTION.

Plaintiffs Michael Rex "Raging Bull" Mooney and the Oklevueha Native American Church of Hawaii, Inc., seek an order from this court allowing them to engage in the "consumption, cultivation, possession and distribution of cannabis."  First Amended Complaint ("FAC") ¶ Intro.  They ask this court to declare that criminal prosecution for these activities, pursuant to the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 841, would violate their right to freely exercise their religion under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1.  Plaintiffs also seek an injunction prohibiting any such future prosecution.

The Government moves for summary judgment in its favor. Despite the parties' opportunities to take discovery, they present the court with a factual record that is extremely thin. Plaintiffs' admissible evidence as to what the beliefs and tenets of the Oklehueva Church are, or how the prohibition on cannabis use and distribution substantially burdens the exercise of their alleged religion, consists primarily of Mooney's own statements. On the bare record before the court, a jury could not reasonably find in favor of Plaintiffs without, in effect, determining that any individual could use any drug by simply asserting that he or she was part of a religion that used that drug as a sacrament. Given what little is before the court, this court grants summary judgment in favor of the Government on the RFRA claim, which is the only claim remaining in this case.

II.      **BACKGROUND.**

Michael Rex "Raging Bull" Mooney ("Mooney") is the "founder," "spiritual leader," and "medicine custodian" of the Native American Church of Hawaii, Inc ("the Church"). FAC ¶ 2, ECF No. 26.[1]  "[T]he Church only exists to espouse the virtues of, and consume, entheogens," id. ¶ Intro., which are "chemical

---

[1] Mooney adopts the allegations in the original Complaint as true.  See Affidavit of Michael Rex "Raging Bear" Mooney in Opposition to Motion to Dismiss ¶ 7, ECF No. 20. The court considers here such factual assertions in the FAC as Mooney apparently has personal knowledge of, to the extent that they are identical to those made in the original Complaint.

substance[s] . . . [that] produce a nonordinary state of consciousness for religious or spiritual purposes." New Oxford American Dictionary 578 (3d ed. 2010).  The Church "embraces all entheogenic naturally occurring substances." Id.  ¶ 25.

Plaintiffs claim that their Church has 250 members in Hawaii, id. ¶ 41, although they do not have any actual records regarding the Church's membership.  See Deposition of Michael Mooney at 132-34, ECF No. 135-5.  See also Plaintiff's Response to Defendant's First Request for Production of Documents, ECF No. 135-9, at Request No. 5 (stating that Plaintiffs have no documents reflecting the current or past membership of Oklevueha).  Confusingly, Mooney at one point suggested that he did have files in "a binder" but said that, "I've already told you guys, there's information that I will not give you period. I'm not giving you a list of my church members' names.  You're not getting that."  ECF No. 135-5 at 174, Page ID # 1155.  The FAC similarly asserts that the Church "maintains accurate records of its authorized participants and medicine people, as do[] all Oklevueha NAC Branches."  FAC ¶ 20, ECF No. 26.

Plaintiffs allege that Mooney is a Native American of Seminole ancestry, FAC ¶ 10, and that the Church is one of 100 branches of the Native American Church, which they say is a recognized religion with an estimated 500,000 members in more than 24 states.  See id. ¶ 19; see also People v. Woody, 61 Cal.

3

2d 716, 720-21, 394 P.2d 813, 816-18 (1964).  It is not clear that Mooney himself has personal knowledge allowing him to attest to that national membership.  Moreover, the FAC appears to elide the distinction between the "Native American Church of North America," the subject of a number of other cases, and the Oklevueha Native American Church.[2]  Notwithstanding the assertions about the Church in the FAC, counsel for Plaintiffs claimed more than once at the hearing on the present motion that the Church has no official affiliation with a larger Native American Church because there is no larger Native American Church relevant to Oklevueha.  Counsel described Oklevueha's religion as peyotism.  Counsel appeared to be differentiating the Church in this case from the Native American Church of North America, which counsel described as an assemblage or association of churches that also practice peyotism.[3]  Plaintiffs' counsel said that the Native American Church of North America requires each member

---

[2] In paragraph 19 of the FAC, Plaintiffs refer to "over 100 branches of the Native American Church," but in paragraphs 20 to 22, Plaintiffs refer only to the "Oklevueha North American Church Branches."  Whatever the origins or composition of the "Oklevueha" organization, it appears to be distinct from the Native American Church of North America.  As far as the court can discern from the record, the "Oklevueha" group originated with Mooney's father, and has a presence in Utah and Hawaii.  See Deposition of Mooney as Rule 30(b)(6) Church representative at 38-39, ECF No. 135-4.  Although its composition may extend beyond those two states, nothing in the record so indicates.

[3] The practices of peyotism are explained in detail in Woody, 394 P.2d at 816-18.

4

church to contribute dues of 150 peyote buttons each year, which Plaintiffs have declined to pay.[4]

Plaintiffs claim that Native Americans also traditionally consume cannabis, especially when peyote is in short supply.  FAC ¶¶ 23-25.  The only material in the record regarding this alleged tradition is Plaintiffs' own statement. Nothing in the record suggests what qualifies Mooney to attest to what "has been traditionally consumed."  That is, he presumably has no personal knowledge of practices preceding his own existence and does not provide any admissible evidence on which he bases this assertion.  Nor can the court tell the extent to which Plaintiffs conform with traditional peyotist practices,[5] or who qualifies to be a Church member.

In his deposition, Mooney asserts that the Church has "a specific set of religious beliefs," but elaborates only by saying that the religion's purpose is "to help people regain

---

[4] In 1984, the Fifth Circuit wrote the following regarding the Native American Church: "The Native American Church admits to membership only Indians and their spouses, whether Indian or not. It has twenty-three chapters, and a membership variously estimated as 250,000 to 400,000 persons." Peyote Way Church of God, Inc. v. Smith, 742 F.2d 193, 198 (5th Cir. 1984).  This appears to have been a reference to the Native American Church of North America, not to Oklevueha.

[5] "Despite the absence of recorded [peyotist] dogma, the several tribes follow surprisingly similar ritual and theology; the practices of Navajo members in Arizona practically parallel those of adherents in California, Montana, Oklahoma, Wisconsin, and Saskatchewan." Woody, 394 P.2d at 817.

their relationship with God" and to use "the ceremonies to speak directly with God."  ECF No. 140-11 at 68.  Mooney explains the "origin[] of [the] religion" by saying that it derives from "ceremonies and sacraments throughout South, Central and North America."  Deposition of Mooney as Rule 30(b)(6) Church representative at 59, ECF No. 135-4.  Mooney says that the Church is "open to individuals regardless of their religious affiliation" and that the use of cannabis can, for example, "help [Christians] with their Christian practices."  Mooney Depo. at 69, 71, ECF No. 135-5.

While Plaintiffs say that "[t]he primary purpose of [their Church] is to administer Sacramental Ceremonies," FAC ¶ Intro., nothing in the record explains what occurs at these ceremonies.  In his deposition, Mooney mentions "sweat lodge ceremon[ies]," "peyote ceremon[ies]," breath ceremon[ies]," and "pipe ceremon[ies]," but he does not describe what Church members do at these events.  Mooney Depo. at 98, ECF No. 135-5.  Mooney also states that individuals can "do their own ceremony," during which they "can just be conscious with their medicine and . . . have their prayer time."  Id. at 183-184.  At most, the court has before it a single page that Mooney says is the Church's Code of Ethics.  It describes the procedures to be followed by those participating in a peyote ceremony.  See ECF No. 135-7.  Mooney

claims that he is "free to write out [his] own code of ethics" for the members of his Church.  ECF No. 140-12 at 23.[6]

Plaintiffs say that peyote is their primary sacrament, and allege in the FAC that they have "full approval" from the Government to use peyote.  FAC ¶ 42, ECF No. 26.  Plaintiffs appear to believe this approval stems from their practice of an "Indian Religion," as defined in 42 U.S.C. §1996a(c)(3). Memorandum in Opposition at 3, ECF No. 140.  The Government disputes that Plaintiffs' "practices . . . are actually tied to the Native American Church" and therefore disputes Church members' right under the law to consume peyote.  Reply Memorandum at 15, ECF No. 142.

In addition to peyote and cannabis, members of the Church also consume numerous other substances, such as "Ayahuasca . . . , Iboga, Kava, Psilocybin, San Pedro, Soma, Teonanacatyl, Tsi-Ahga, and many others."  FAC ¶ 25, ECF No. 26.  "Everyone who is a part of [the Church] uses [c]annabis during ceremonial times, as well as on a daily basis as a sacrament during their own personal prayer time."  <u>See</u> Response to Interrogatory No. 2,

---

[6] Mooney was deposed twice, once as a Church representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure.  The document in which Mooney says he could write his own code appears to be an excerpt from his deposition, but because Plaintiffs have attached it without a front page or sufficient other pages providing context, there is no way to tell whether Mooney was testifying as to his personal position and/or as a Rule 30(b)(6) representative of the Church.

ECF No. 140-6.  Cannabis is also used for "lunar cycle sweats." These sweats occur twice a month "all around the Hawaiian islands" and last about "three hours," and "afterwards, [participants] have a potluck where people bring . . . food." Mooney Depo. at 217, ECF No. 135-5.

Plaintiffs claim to "acquire their cannabis by cultivating it or acquiring it from other churches, caregivers or other state-sanctioned methods."  FAC ¶¶ 37, 40, ECF No. 26. Mooney says that he "possesses a State of Hawaii Department of Public Safety Narcotics Enforcement Division Medical Marijuana Registry Patient Identification Certificate" that "allows him to acquire, possess, cultivate and consume cannabis without State criminal penalty in the State of Hawaii."  Id. ¶ 39.  However, it appears that card expired in 2012, and Mooney does not have a currently valid card.  Mooney Depo. at 192,  ECF No. 135-5. Nothing in the record reveals how Mooney received such accreditation in the first place, or whether marijuana possessed or obtained for medical purposes is used for Church activities by persons without medical problems.

In an apparent reference to medical marijuana, Plaintiffs say that the cannabis used at the ceremonies is brought by members who are "state card holders."  Id. at 197.  If they were to prevail in this lawsuit, Plaintiffs intend to cultivate "church gardens to be able to provide [cannabis] to

[their] church members." Id. at 201.  However, Plaintiffs claim
not to "distribute" cannabis, in the sense that "when [members]
leave a ceremony, [they're] not taking [cannabis] home."  Mooney
Rule 30(b)(6) Depo. at 112, ECF No. 135-4.  Plaintiffs also say
they disapprove of the recreational use of cannabis.  Id. at 152.

        On March 22, 2010, Plaintiffs filed a First Amended
Complaint seeking a declaration of their right to possess and
distribute cannabis, and an injunction preventing the Government
from prosecuting Church members for their cannabis-related
activities.  The FAC also sought the return of or compensation
for cannabis that the Government had seized from material shipped
to Plaintiffs.  See ECF No. 26.

        On June 22, 2010, the court dismissed Plaintiffs'
"preenforcement claims," i.e., claims that their rights were
being violated even though no drug charges against Plaintiffs had
issued.  The court ruled that those claims were not ripe and
dismissed the tort claims against Defendants for theft and
conversion of Plaintiffs' cannabis, citing the Supremacy Clause.
See ECF No. 34; 719 F. Supp. 2d 1217 (D. Haw. 2010).  On October
26, 2010, the court dismissed the remaining claim for the return
of or compensation for the seized cannabis.  See ECF No. 48; 2010
WL 4386737 (D. Haw. Oct. 26, 2010).

        On April 9, 2012, the Ninth Circuit held that
Plaintiffs' preenforcement claims were ripe given the

Government's prior seizure of cannabis that had been sent to Plaintiffs.  The Ninth Circuit remanded those claims.  However, the Ninth Circuit affirmed this court's decision concerning the tort claims and the claim for the return of or compensation for the seized cannabis.  <u>See</u> ECF No. 58; 676 F.3d 829 (9th Cir. 2012).

On July 13, 2012, Defendants moved to dismiss all remaining claims.  <u>See</u> ECF No. 63.  The court granted the Government's motion with respect to claims arising under the First Amendment's Free Exercise Clause, the Fifth Amendment's Equal Protection Clause, and the American Indian Religious Freedom Act.  <u>See</u> ECF No. 85.  The court also granted the Government's motion with respect to RFRA claims that related to cannabis that was not used in the exercise of Plaintiffs' religion.  However, with respect to Plaintiffs' claimed use of cannabis in the exercise of their religion, the court denied the Government's motion.  <u>Id.</u>  Noting that all that was required at the motion to dismiss stage was "sufficient factual allegation of [] a burden" on Plaintiffs' exercise of religion, the court held that Plaintiffs stated a claim under RFRA.  <u>Id.</u>

In preparation for the hearing on the present summary judgment motion, this court issued a list of specific questions and asked the attorneys to attend the hearing prepared to address

them.  The hearing focused on the parties' responses to those questions.

### III.        SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  The burden initially falls on the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough

doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

III.     ANALYSIS

RFRA "suspends generally applicable federal laws that substantially burden a person's exercise of religion unless the laws are the least restrictive means of furthering [a] compelling governmental interest."  United States v. Antoine, 318 F.3d 919, 920 (9th Cir. 2003) (internal quotation omitted).  RFRA therefore requires a two-step analysis.  First, "[a] claimant under the Act must [] establish a prima facie case by showing that the government action at issue works a substantial burden on his ability to freely practice his religion."  United States v. Lafley, 656 F.3d 936, 939 (9th Cir. 2011).  Second, if the claimant meets its prima facie burden, a court must ask whether

the government's regulation "'is in furtherance of a compelling governmental interest' and is implemented by the 'least restrictive means.'" Id. (quoting 42 U.S.C. § 2000bb-1).

While the Government might be able to prevail in this case based on the second step,[7] "it is not required to [do so] unless the plaintiff[s] first prove[] [their prima facie case]." Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1069 (9th Cir. 2008). "To establish a prima facie RFRA claim, a plaintiff must present evidence sufficient to allow a trier of fact rationally to find the existence of two elements." Id. at 1068. First, the plaintiff must show that "the activities the plaintiff claims are burdened by the government action [are] an 'exercise of religion.'" Id. Second, the plaintiff must show that "the government action [] 'substantially burden[s]' [that] exercise of

---

[7] The Government might possibly be able to show, for instance, that controlling marijuana distribution is a bigger and more complicated problem than controlling peyote distribution. See United States v. Lepp, 446 F. App'x 44, 46 (9th Cir. 2011) ("Applying the criminal laws prohibiting possession and manufacture of marijuana to Lepp is the least restrictive means of furthering the government's compelling interest in preventing diversion of sacramental marijuana to nonreligious users."); Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Holder, 365 F. App'x 817, 820 (9th Cir. 2010) ("We have clearly indicated that RFRA does not permit the unlimited production or distribution of marijuana.").

religion."  Id.  Plaintiffs here do not present sufficient evidence as to either element.

> A.   **A Reasonable Juror Could Not Conclude Based on the Evidence in the Record that Plaintiffs' Cannabis Use is an Exercise of Religion.**

RFRA inherently requires the federal courts to engage in the "notoriously difficult, if not impossible, task" of determining whether a particular practice is "religious." Alvarado v. City of San Jose, 94 F.3d 1223, 1227 (9th Cir. 1996). While such a determination undoubtedly "presents a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." Jones v. Bradley, 590 F.2d 294, 295 (9th Cir. 1979).  Thus, to get a RFRA exemption from federal drug laws, an individual must do more than simply assert that those laws burden his exercise of religion.

The Government argues that this court must look to "three useful indicia" of whether a belief system is religious, in keeping with Alvarado v. City of San Jose, 94 F.3d 1223 (9th Cir. 1996).  In Alvarado, the Ninth Circuit said:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

Alvarado, 94 F.3d at 1229 (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981)).

This court, however, cannot meaningfully address whether Plaintiffs' alleged religion conforms to these three or any other characteristics, because Plaintiffs have given the court almost no admissible evidence regarding their religion. Plaintiffs' own description of the exhibits it presents includes the following:

> Plant Biographies I Cannabis Sativa (plantlives.com) Sue Eland, 2008 (Exhibit 3); Ethnopharmacology and Taxonomy of Mexican Psychodysleptic Plants, Jose Luis Diaz, MD, Journal of Psychedelic Drugs, January-June 1979 (Exhibit 4); Hallucinogenic Plants of the Tarahumana, Robert A Bye, Jr., Jomnal of Ethnopharmacology, 1979 (Exhibit 5); The Ethnology of Peyotism, Weston La Barre, January 2011 (Exhibit 6); Cannabis: A History, Martin Booth, June 2005 (Exhibit 7); The Nectar of Delight The Early History of Cannabis from Plants of the Gods, Richard Schultes & Albmi Hofmann, 2001 (Exhibit 8); The Marijuana Conviction, Richard J. Bonnie, 1999 (Exhibit 9).

Plaintiffs' Concise Statement of Facts ¶ 1, ECF No. 140-1.  None of the above exhibits appears to be admissible.  These excerpts from books, magazines, and websites are presumably being offered as factual proof for the statements contained within them, but Plaintiffs fail to propose any exception to the hearsay rule under which they could be admitted.  See Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.").  In

16

any event, none of these exhibits says anything about whether peyotism in the manner practiced by Plaintiffs is a religion, whether Plaintiffs are true peyotists, or whether cannabis is an important drug in peyotism.

Plaintiffs also submit a Department of Justice memorandum sent to United States Attorneys that sets forth the Government's drug enforcement priorities (Exhibit 1), and testimony by Deputy Attorney General James M. Cole before the Senate Judiciary Committee, discussing that memorandum (Exhibit 2). Neither of those documents has anything to do with Plaintiffs' religion.

The only other evidence presented by Plaintiffs in their opposition are excerpts of Mooney's deposition testimony (Exhibits 10 and 11). Also before the court is an affidavit that Mooney submitted earlier in this litigation, and Plaintiffs' FAC, parts of which Mooney incorporated by reference into an affidavit he submitted adopting the original Complaint. Plaintiffs' concise statement of facts cites almost exclusively to the FAC and to Mooney's deposition testimony. In other words, Plaintiffs essentially rely on Mooney's own proffers regarding his religion in attempting to meet their summary judgment burden.

The Government, for its part, relies on excerpts from Mooney's depositions, Plaintiffs' answers to certain interrogatories, what appears to be part of the Church's "Code of

Ethics," Plaintiffs' responses to the Government's requests for documents, and the Church's articles of incorporation.  The only meaningful information regarding Plaintiffs' religion in these documents comes from Mooney.

Noting that the evidence in the record was "extraordinarily scant," the court asked the parties to come to the hearing on the present motion prepared to direct the court to evidence in the record regarding the Church's beliefs and practices, Plaintiffs' relation to the broader Native American Church, and the importance of cannabis to Plaintiffs' alleged religion.  ECF No. 144.  At the hearing, Plaintiffs' counsel relied almost exclusively on Mooney's proffers and on evidence that the court cannot locate in the record or that was never mentioned in either party's concise statement of facts.  See Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statement of the parties.").  See also Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that a district court is not required at the summary judgment stage "to search the entire record, [when] the adverse party's response does not set out the specific facts or disclose where in the record the evidence [] can be found").

A reasonable juror could not conclude from this record that Plaintiffs' cannabis use is a religious practice.  Indeed, there is simply not enough evidence in the record to separate Plaintiffs' use of cannabis from any other entity or individual's nonreligious use of cannabis.  To justify the Church's allegedly protected status, Plaintiffs could, for example, have introduced evidence from an expert regarding the relationship between Plaintiffs' Church and a Native American Church that has been accorded protection, or the importance of marijuana to peyotists.  At the very least, Plaintiffs could have introduced declarations from other members of Mooney's Church, or the Native American Church of North America, or, indeed, anyone familiar with Mooney's religion.

As the "founder" and "spiritual leader" of Oklevueha, Mooney appears to be someone "with personal knowledge and other cognizable and significantly probative evidence" about the Church.  See United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999).  However, in relying almost entirely on Mooney's proffers, Plaintiffs ask this court "to find a genuine issue [of material fact] where the only evidence presented is uncorroborated and self-serving testimony."  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Even if Mooney's own statements could suffice to establish the existence of a religion, they do not do so because

they are inscrutable.  Nothing in those statements allows a juror to understand the beliefs, tenets, or practices of the Church. Instead of being presented with a set of facts from which they could determine whether the Church is a religion, jurors would be presented only with Mooney's own *conclusion* that it is a religion, without any basis on which to accept or reject that conclusion.  See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").  See also Head v. Glacier Nw. Inc., 413 F.3d 1053, 1059 (9th Cir. 2005) (discussing "longstanding precedent that conclusory declarations are insufficient to raise a question of material fact").

The court recognizes, of course, that Rule 702 of the Federal Rules of Evidence permits testimony by a witness "who is qualified as an expert by knowledge, skill, experience, training, or education."  Mooney says nothing about his skill, experience, training, or education, but, as the founder of the Church, he may have specialized knowledge about Church tenets.  The problem for the court is that any knowledge of those tenets remains locked within Mooney.  It cannot be the case that an individual becomes an expert for RFRA purposes by founding a church while keeping church doctrine mysterious or secret and simply declaring that

what he practices is a religion.  That is not an opinion by an expert that any factfinder could rely on.  Without analysis or supporting material, such a declaration is not admissible under even the most liberal exercise of this court's function as the gatekeeper of admissible evidence.  See Kumho Ture Co. v. Carmichael, 526 U.S. 137, 147-53 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  The court does have Mooney's statement that he could, if he so desired, change the Code of Ethics.  This is a statement concerning Mooney's authority, not a statement that allows the court to identify a triable issue as to whether Plaintiffs' peyote ceremony or anything else Plaintiffs do or believe in could be defined as a religion.

At the outset, this court notes that the inclusion of the words "Native American Church" in the Church's name and Mooney's own description of himself as Seminole do not suffice to automatically protect Plaintiffs' use of cannabis.  The record does not support the inference that Plaintiffs have a connection with any other organization, except for Mooney's father's church, or that, despite the references in their arguments to peyotism, they actually practice peyotism.  There is no admissible evidence in the record that any Native American besides Mooney and possibly his father treat cannabis use as integral to any religion.  That is, while other courts have recognized the

21

importance of peyote in Native American religious ceremonies, this court lacks a record as to cannabis use that comes anywhere close to what those other courts had as to peyote use.  See, e.g., Woody, 394 P.2d at 816-818 (describing peyote rituals and the belief that peyote "embodies the Holy Spirit").

What this court has instead are Mooney's vague statements.[8]  A few examples will illustrate the confusing nature of what Plaintiffs submit establishes their right under RFRA to use cannabis.  For instance, when asked whether the Church "require[s] that individual participants adhere to a specific set of religious beliefs," Mooney responds:

> Sure.  We encourage.  You know, we're--the whole
> purpose--one of the sole purposes, one, is to help
> people regain their relationship with the Creator, you
> know, which we believe . . . is the elements: Is earth,
> is nature, okay.  So that, of course, that's--that's
> what, you know, the ceremonies are.  And one of the
> major reasons why they're there is to allow people to
> gain a relationship with God, if you want to, you know,
> use that word, okay."

---

[8] Mooney's deposition excerpts are frustratingly incomplete. For example in Exhibit 11 to his opposition, Mooney is asked whether it would be wrong "for another Oklevueha branch not to embrace cannabis."  He responds by asking whether he should state "my opinion or the Church's opinion," suggesting that his opinions may not reflect Church orthodoxy.  ECF No. 140-12, at 70.  Unfortunately, the excerpt does not continue on to the next deposition page.  Exhibit 10 to Mooney's opposition similarly ends with the suggestion that "sacraments" and "medicine" include a host of substances including sage, cedar, and "everything." But the excerpt ends at page 197, leaving the response tantalizingly incomplete.  ECF No. 140-11.  (The Government includes page 197 in Exhibit 2 to its moving papers, similarly without page 198.)

ECF No. 140-12, at 68.  Later Mooney is asked if there is a difference between a "religious" and a "spiritual" organization, to which he responds, "Organization to me is religion.  So, if it's a spiritual organization, that is a religion."  Mooney Depo. at 76, ECF No. 135-5.  Then he says, "[O]rganized religion is--is--it's a community.  It's--we help each other, you know.  It's a church.  You know, it's--it's not just spiritual.  We--seriously, we help each other in society and humanity.  It's--it's a service.  You know, we serve each other, we help each other . . . [s]o I don't think it's just linked to spirituality."  Id. at 77.  Statements like these are not isolated generalities; they are indicative of the way Mooney articulates the content of what he says his religious beliefs are.

In short, when this court looks for evidence supporting the conclusion in paragraph 33 of the FAC that the Church's "use of cannabis is embedded within a set of deeply rooted and sincere religious beliefs and traditions," the court finds such evidence lacking.  The record as to what those "religious beliefs and traditions" are is extremely thin.  This court has examined cases discussing the use of peyote in Native American religion and has attempted to substitute cannabis using the same analysis.  Whether such substitution is permitted, as well as what beliefs and traditions surround that substitution, is unclear on the

present record.  What Mooney believes remains elusive, and this court has no evidence at all of any cannabis tradition.

Similar confusion abounds when Mooney discusses his Church's membership.  Mooney states at one point that ceremonies are only open to "members" of the Church, but then says "[w]ell if you made it to the ceremony . . . you're participating in the ceremony, you're a member in that sense." Id. at 137.  When asked if one becomes a member "by merely showing up," Mooney responds "[w]hen they participate in the ceremony, they are a member." Id. at 138.  At that point in the deposition, Mooney's counsel interrupts and says to the Government's attorney that the ceremonies are "only publicized to within the church.  How are you going to find out, my friend?" Id.  Mooney acknowledges that his counsel is "speaking the truth," but then reiterates "we're open to anybody and everybody to come." Id. at 138-39.  Mooney then notes, "I mean, how are you--I don't foresee you making it to the ceremonial grounds, you know.  The law of attraction, I don't see happening there, you know." Id. at 138.  The Government's attorney asks Mooney once again whether "anyone who shows up and participates becomes a member of the church?" Id.  Mooney answers "yes," but then launches into a nonresponsive exposition of the "life-changing" nature of the ceremonies. Id.  Whether the attorneys continued this exchange is unclear because the excerpt does not continue onto the next deposition page. Id.

In yet another confusing discussion, Mooney is asked whether his church is "a branch of a larger . . . church." Mooney replies that his church is a branch of "Oklevueha Earth Walks of Utah, Inc," which is an organization run by Mooney's father.  ECF No. 140-12 at 23.  When asked if the Utah organization is a "parent organization," however, Mooney replies "I mean, I don't know if I would call it that.  You know, I'm free to write out my own code of ethics, even though I believe [that] the code of ethics that ha[s] been put out [is] rather perfect."  Id.  Mooney describes the Utah Church as the "mother church" and says "[a]s long as we're honoring the church that we've been--you know, that I've been blessed with the code--their Code of Ethics.  As long as I'm honoring the mother church, it's--yeah I can modify [my] branch's Code of Ethics."[9]  Mooney Depo. at 93, ECF No. 135-5.  At another point in his deposition, Mooney says that one can "go on the [Utah church's] website and

_____

[9] The only "religious" text Mooney refers to at any point appears to be this "Code of Ethics," which the Government attaches to its moving papers as an untitled Exhibit 4.  Despite Mooney's recurrent references to this Code, it does not explain the tenets of his alleged religion, other than to set forth a set of "responsibilities" that "participants" and "leaders" in the "Sacramental Ceremonies" must take on.  These responsibilities include ensuring that "spiritual practices are inspired and conducted in ways that respect the common good, with due regard for public safety, health, and order" and requiring that participation "be voluntary and based on prior disclosure and consent given by each participant while in an ordinary state of consciousness."  ECF No. 135-7.  In some ways, this document appears to be more concerned with liability issues than religious doctrine.

actually get listed with the head mother branch as a member of the Native American Church of Hawaii." Id. at 132.  When asked "what type of access [he has] to the mother branch's list [of members]," however, Mooney replies that he "doesn't have any." Id.  This leaves unclear any doctrinal or other connection between Mooney's church and the Utah church.

The preceding examples demonstrate the basic problems with the record presented to the court.  Crucial topics are repeatedly left unaddressed by Mooney's statements, and Mooney's statements are often muddled, contradictory and confusing.

What is before the court is a depiction of Plaintiffs' alleged religion that is insufficient to allow a jury to determine that it conforms to the Alvarado or any other factors. Even if a jury could undertake an Alvarado analysis or conduct some other evaluation based on what is before the court, a jury could not reasonably conclude from the sparse record presented here that Plaintiffs' belief system actually constitutes a religion.  The record provides no evidence that the Church "addresses fundamental and ultimate questions having to do with deep and imponderable matters[,] . . . is comprehensive in nature[,] . . . or can be recognized by the presence of certain formal and external signs."  Alvarado, 94 F.3d at.  While Alvarado's list of characteristics is admittedly not definitive or exhaustive, Alvarado clearly indicates that a religion should

encompass more than getting "high."  This court is not requiring Plaintiffs to have a religious organization akin to the Roman Catholic Church, or to produce written membership lists or a formal theological document.  But this court does read the governing law as requiring more than we-use-cannabis-to-feel-one-with-the-universe.  Such use might be beneficial, and the number of states permitting such use may be about to grow substantially, but what the court has before it is a claim based on religious use.

No reasonable juror could infer, from what is presently in the record, that Mooney's religion is anything more than a strongly held belief in the importance or benefits of marijuana. Even if this belief is sincerely held, and even if marijuana use is indeed beneficial, the court cannot conclude from the record that a reasonable juror could find that Plaintiffs' belief is religious in nature.

Plaintiffs do not meet their burden of providing evidence sufficient for a juror to reasonably conclude that Plaintiffs use cannabis for religious purposes.  Plaintiffs call their practice religious, call themselves peyotists, have included "Native American Church" in their name, and are led by Mooney, a Native American.  They declare that they are allowed by law to use peyote and should similarly be allowed by law to use cannabis.  The crux of the problem for this court is that

Plaintiffs' underlying declaration of a right to use peyote, even if true, is not supported by admissible evidence in the record. The court therefore cannot legitimately draw an analogy to cannabis use.

> **B.    A Reasonable Juror Could Not Conclude Based on the Evidence in the Record that Prohibiting Cannabis Use Or Distribution Places a Substantial Burden on Plaintiffs' Alleged Religion.**

Even if the evidence in the record did support the existence of a religion, Plaintiffs also fail to provide sufficient evidence regarding the second element of RFRA's prima facie test.  A reasonable juror could not conclude that the prohibition on cannabis constitutes a substantial burden on Plaintiffs' alleged religion.  "A statute burdens the free exercise of religion if it puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, including when, if enforced, it results in the choice to the individual of either abandoning his religious principle or facing criminal prosecution.  Guam v. Guerrero, 290 F.3d 1210, 1222 (9th Cir. 2002) (internal quoatation omitted).  The law is clear that "[a] substantial burden must be more than an inconvenience."  Id.

On the present record, there is no evidence to suggest that the prohibition on cannabis places Plaintiffs in the dilemma RFRA was designed to avoid.  Mooney himself describes peyote as his religion's "primary sacrament," and lists a litany of other drugs his Church members use.  Nothing in the record explains why

28

relying on these other drugs instead of cannabis would be more than an inconvenience for Plaintiffs.  "[T]he overriding [reason] that peyote is essential and central to the [Native American Church] is that without peyote their religion would not exist." Peyote Way Church of God, Inc. v. Smith, 742 F.2d at 200-01. Nothing suggests that Mooney's Church cannot exist without cannabis.  Plaintiffs simply do not explain what makes cannabis unique or essential to the exercise of their alleged religion.

While Plaintiffs claim that cannabis is useful when peyote is in short supply, there is no evidence (or even assertion) before the court that Plaintiffs are finding peyote in short supply in Hawaii at this time.  Even if cannabis is a religiously acceptable substitute for peyote, why it is the *only* acceptable substitute?  Indeed, under their asserted rationale, nothing would preclude Plaintiffs from deeming other substances to be essential to their religion and demanding further exemption from the CSA.

This court concludes that the record does not support the reasonable inference that Plaintiffs' religion is substantially burdened by any limitation on marijuana use.

V.          CONCLUSION.

While RFRA most certainly protects the free exercise of religion, it does not protect individuals just because it is difficult to precisely define religion.  That is, RFRA was not intended to shield quasi-religious entities created solely to circumvent federal law.  See, e.g., United States v. Meyers, 95 F.3d 1475 (10th Cir. 1996).  At first blush, given Mooney's Native American heritage and the Church's name, Plaintiffs might appear to fall within the protections afforded Native American religions.  But the court, despite seeking evidence linking Plaintiffs' cannabis use to a Native American religion, finds nothing in the record actually providing such a link.

That is not to say that Plaintiffs do not actually require cannabis in their religion.  The court holds only that the present record does not allow the conclusion that Plaintiffs require cannabis to practice any religion or that their purported religion is substantially burdened by enforcement of the CSA. See, e.g, PLANS Inc. v. Sacramento City Unified Sch. Dist., 476 F. App'x 684, 685 (9th Cir. 2012) ("Although we express no view as to whether [plaintiffs' belief system] could be considered a religion on the basis of a fuller or more complete record, the record as it is before us is simply too thin to sustain that conclusion.").

The Government has shown "that the nonmoving party d[oes] not have enough evidence to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1104 (9th Cir. 2000). After an opportunity to conduct discovery, Plaintiffs have not provided evidence from which a reasonable juror could conclude that Plaintiffs' religion has been or will be substantially burdened.  As a result, there is no need for the court to address whether the Government's prohibition on cannabis either serves a compelling interest or is the least restrictive means of furthering that interest.  The court grants summary judgment in favor of the Government on Plaintiffs' RFRA claim (Count 1).

The Clerk of Court is directed to enter judgment for Defendants and to close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 31, 2013.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Oklevueha Native Am. Chuch v. Holder; Civil No. 09-00336 SOM/BMK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT